# CHARLESTON.

U. S. G. PRICE *v.* SAMUEL MORAN *et al.*

## (C. C. 362.)

Submitted September 8, 1925.   Decided September 15, 1925.

VENDOR AND PURCHASER—*In Bill to Enforce Vendor's Lien, Filed by Assignee of Debt Secured Thereby, Averment That Valuable Consideration Passed Between Assignor and Assignee Is Not Necessary.*

> In a bill to enforce a vendor's lien on land, filed by the assignee of the debt secured by the lien, it is not necessary to aver that a valuable consideration passed between the assignor and assignee.

Case certified from Circuit Court, Barbour County.

Suit by U. S. G. Price against Samuel Moran and others. After sustaining demurrer to plaintiff's bill, the trial judge certified his ruling for review.

*Ruling reversed.*

*William T. George,* for plaintiff.

LIVELY, PRESIDENT:

Upon sustaining the demurrer to plaintiff's bill the Circuit Judge certified his ruling for review.

The bill is for the purpose of asserting a lien for a balance of purchase money aggregating the principal sum of $1,400, by the plaintiff claiming to be the assignee of Catherine Hill, Amanda Coontz, and Bernetta Johnson, against a tract of land

of 114 acres deeded to defendant Samuel Moran on the 7th
day of January, 1908, by Frederick Booth, in which deed the
grantor expressly reserved said vendor's lien for the payment
of sums aggregating $1,400 to the above-named Hill, Coontz,
and Johnson; and to set aside and annul a release of the ven-
dor's lien so reserved, purported to have been executed by
Frederick Booth in the year 1920 just prior to his death, which
release was duly recorded.

It appears from the bill that Frederick Booth in the year
1908 owned the tract of land in question and on the date above
mentioned executed a deed to Samuel Moran, defendant, and
Leida Moran, his wife (daughter of the grantor), the consid-
eration being that the grantees should maintain and support
the grantor during his natural life and provide for all his
physical wants and needs, and the further consideration that
the said Samuel Moran "shall at the death of the party of
the first part pay without interest to the following named per-
sons, daughters of the party of the first part, the following
sums respectively, viz: To Catherine Hill the sum of $600.00;
To Amanda J. Coontz the like sum of $600.00, and to Ber-
netta Johnson the sum of Four Hundred Dollars, and to se-
cure the payment of said several sums as aforesaid a vendor's
lien is expressly retained by the party of the first part for the
benefit of said persons equally and respectively upon the said
tract of land hereby conveyed." The deed was duly recorded.
At the time of its execution, Booth, the grantor, an octogen-
arian, resided with the grantees at their home. He died in
1920. Leida Moran, one of the grantees in the deed, died in
1919, and the Sheriff of Barbour County was appointed as
administrator of both estates and is one of the defendants in
that capacity.

From the date of the execution of the deed in 1908 until the
death of Booth he continued to reside with defendant Moran
and his wife and was supported by them as stipulated in the
deed. It is charged that, on March 18, 1920, defendant Moran
procured from Booth a release of the vendor's lien retained to
secure the payment of the sums specified in the deed, to the
daughters, Catherine, Amanda, and Bernetta, with the intent
and purpose of cheating and defrauding them out of the money
secured to them in the deed; that Booth was old and feeble,

and, by reason thereof, was incapable to make such release and did not know how to transact any business whatever, if in fact he ever did execute such paper; and the bill further charges that he had no authority to make such release, if he did so, and that the same is a nullity, and was not recorded until after the death of Frederick Booth. The release is exhibited with the bill and is a formal release with the addition thereto of these words, "The purchase money secured to Catherine Hill, Amanda J. Coonts, Bernetta Johnson, by reason of the retention of the said Vendor's lien, has been fully paid off and satisfied to Frederick Booth." Plaintiff avers that Catherine Hill, Amanda Coontz and Bernetta Johnson have assigned and transferred to him the said sums in the deed mentioned in their favor for the payment of which the vendor's lien was retained, and that he has the right to collect the same, and that no payment has been made thereon. Samuel Moran, the administrator of the estates of Frederick Booth and Leida Moran, the three daughters, Catherine, Amanda, and Bernetta, are made defendants, and it is charged that they are the only parties in interest. The bill sets out that the three persons for whose benefit the vendor's lien was retained were daughters of the grantor, Booth, and that the consideration for the amounts given them was the natural love and affection of the grantor for them. The prayer is for judgment for the aggregate sum of the claims assigned to plaintiff, and sale of the land on which the vendor's lien was reserved in discharge of the lien; and for general relief.

Demurrant, Samuel Moran, has made no appearance and filed no brief in this court; nor has the lower court indicated on what ground the demurrer was sustained. Moran seems to have abandoned the cause here on this certification.

Plaintiff contends that the sums payable to the daughters by Moran secured by the vendor's lien as set out in the deed, are executed gifts *inter vivos* and that the vendor had no control of or interest in these executed gifts and could not legally release the lien, and he relies upon *Fleshman* v. *Hoylman,* 27 W. Va. 728. In the case cited Holyman owed Fleshman a considerable sum of money which was evidenced by a note secured by deed of trust. Later, Fleshman assigned, transferred and delivered the note to a trustee for the benefit of his

children, naming them. Later, he gave Hoylman a receipt for
$400.00, the amount to be credited on the note in the hands of
Fleshman, the trustee, and about a year after this Hoylman
obtained from Fleshman a release of the deed of trust lien
securing the payment of the note. Fleshman died about a year
after the execution of the release of the deed of trust lien, and
the trustee to whom he had assigned and delivered the note for
the benefit of said children, instituted a suit in chancery to set
aside the release of the deed of trust, alleging its procurement
by fraud, and asking that the lien so attempted to be released
be held as valid and the property sold for the payment of the
note. The court held that Fleshman's assignment of the note
with delivery thereof to the trustee for the benefit of certain
children, became irrevocable and he had no longer any control
over the same, and the receipt and release were both inopera-
tive against the trustee and the beneficiaries. The gift to the
children was entirely voluntary, but was an absolute one which
the donor had the right to give. It was fully executed; nothing
remained to make it effective, and, therefore, it became irre-
vocable. The difference between that case and the one at bar is
that the purchase money debt owing by Moran, amounting to
$1,400 and payable to the daughters named, at the death of
Booth, was not evidenced by a note or other commercial paper.
Generally, a gift *inter vivos* must include delivery in order to
consummate and make it irrevocable. But if the gift be not
such as is capable of manual delivery, a constructive delivery
is sufficient. A note is the evidence of the debt, and transfer
and delivery of the note is evidence that the debt is delivered
to the donee. If there be no note and the gift is a chose in
action, the courts generally hold that there must be some
writing which would evidence the intention of the donor, or
at least the facts and circumstances must be such as to compel
the conclusion that the gift was made. See *Adams v. Merced
Stone Co.,* 3 A. L. R. 928, and the annotation thereto on page
933. In the later case of *Dinslage v. Stratman,* 14 A. L. R. 702,
the Nebraska court held that where the proof is clear of inten-
tion to make an absolute gift *inter vivos* of a chose in action,
an unequivocal direction by the donor to the debtor to pay it
to the donee instead of to the creditor, is a sufficient delivery,
it being the only delivery of which the chose was susceptible.

But in the case at bar we have a writing under seal and acknowledged by the donor, directing the debtor, Moran, to pay this balance of purchase money, these specific sums, to his daughters, at his death, without interest, and retaining a vendor's lien to secure the payment thereof for their benefit. We think this writing in itself is·sufficient evidence of a gift *inter vivos.* On this demurrer it is unnecessary to discuss the question as to whether the donor, Booth, did in fact attempt to revoke the gift during his lifetime; because the bill charges, and it must be taken as true, that he did not revoke it; that he did not release the lien and did not receive the money alleged to have been paid in the release; and that this release was obtained from him by fraud.

One of the points raised by defendant's counsel in his demurrer is that the direction and requirement in the deed for him to pay the sums given the three daughters as a part of the consideration for the land, is a testamentary disposition in its character and effect, and not having the requisites of a will, can not be enforced either in law or equity. This point is without merit. The deed clearly evinces an intention to give these sums for which the lien was retained, to the grantor's three daughters, and the stipulation that it was to be paid at his death, without interest, simply delays the enjoyment of the gift.

The point is also raised that the bill should aver that plaintiff paid a consideration to the daughters for the assignment and transfer of their choses in action to him. It will be observed that the bill says that these daughters assigned and transferred to the plaintiff these claims and that he has the legal right to collect them. It is not averred that he paid a valuable consideration for the assignments. We apprehend that this was the main question which prompted the certification; for that is one of the questions which the circuit court has tersely stated. Is it necessary for an assignee of a chose in action to aver in his pleading in a suit against the debtor that he paid a valuable consideration to his assignor? Does the failure to do so render the pleading demurrable? Vol. 5, C. J., Sec. 90, page 930, says: ''Where the legal title passes by an assignment, the assignee may maintain an action based upon his title, and it is immaterial whether or not he paid any con-

sideration therefor. But in an action by an assignee defendant may controvert the allegation of ownership, and show that plaintiff is not the real party in interest, and upon this question the payment of a consideration for the assignment is a relevant fact to be considered. If, however, the assignment is actually made, defendant can not question it upon the ground that no consideration was paid therefor.'' The reason for this rule is given in *Cummings* v. *Morris*, 25 N. Y. 625; approved in *Chase* v. *Dodge*, 111 Wis. 70, and is stated to be:

> ''If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest, whether the assignment was with or without consideration, and notwithstanding the assignee may have taken it subject to all equities between the assignor and third parties.''

Among the numerous cases stating this doctrine are: *Gregoire* v. *Rourke*, 28 Oregon 275, 42 P. 996; *Joseph Phipps* v. *Bacon*, 183 Mass. 5; *Richardson* v. *Mead*, 27 Barb. (N. Y.) 178, in which last case it was said, ''A gratuitous assignment, if good on its face, is sufficient; for it passes the title, as between the parties.'' *Anderson* v. *Reardon* (Minn.), 48 N. W. 777; *Sheridan* v. *Mayor*, 68 N. Y. 30; *Henderson* v. *Ry. Co.*, 91 N. W. (Mich.) 630; *Levins* v. *Stark*, 110 Pac. (Ore.) 980; *Pearce* v. *Wallis Landes & Co.*, 124 S. W. (Tex.) 496. In *Wallace* v. *Leroy*, 57 W. Va. 263, plaintiff having in his hands various claims amounting to about $300.00, for collection against an insolvent debtor, obtained assignments from the owners of the claims and instituted suit in his own name and sued out an attachment. Defense was made that he paid no consideration for the assignment, and this court held that the question of consideration for the assignments could not be considered in a court of law.

We are not dealing with a situation where an assignment without consideration is made merely to enable plaintiff to sue, by which the real owner attempts to avoid costs by having a nominal assignee bring the suit for his (the real owner's)

benefit. That question does not arise upon this demurrer, and it would be improper to consider what would be the effect of such a state of facts. It will be noted that the three daughters, the assignors, are made parties defendant, and they would be bound by any proper decree which might be entered. It is immaterial to defendant to whom he shall pay these obligations if they be successfully asserted. He is assured protection by the fact that all parties in interest are before the court.

The bill states an equitable cause of action, and the demurrer should have been overruled.

*Ruling reversed.*