J. L. RAMSEY *v.* SAMUEL MORAN *et al.*

(No. 6987)

Submitted March 15, 1932.   Decided March 22, 1932.

*Wm. T. George,* for appellant.
*J. Blackburn Ware* and *Paul Ware,* for appellee Sinsel.

MAXWELL, JUDGE:

This suit was instituted in the circuit court of Barbour County by U. S. G. Price to enforce a vendor's lien against a certain tract of 114 acres of land which had been conveyed to Sam Moran and Lydia Moran, his wife, by Frederick Booth, January 7, 1908.   The cause came to this Court on the sufficiency of the bill.   *Price* v. *Moran,* 99 W. Va. 498, 129 S. E. 472.   Lydia Moran, who is now deceased, had been previously married to Granville Sinsel.   The children of her two marriages are parties defendant.   Arthur Sinsel is one of her older children.   The 19th of April, 1926, a decree was rendered in favor of the plaintiff for $1,600.00 with interest from May 29, 1920.

In further discussion of the facts of the case and the legal principles applicable thereto, the trial chancellor in a clear and forceful opinion, said:

"Afterwards, on the 29th day of May, 1926, a decree of sale was entered, directing that the one-half interest of Sam Moran in the 114 acres be sold, at which sale, A. F. Bennett and L. D. Booth became the bidders at $1175.00 and made the down payment.

"But before this sale was confirmed, J. L. Ramsey tendered an up-set bid of $1450.00, and tendered his bond in the sum of $1500. with A. F. Cleavenger as surety, agreeing if the property was resold to start the bidding at $1450.00. This up-set bid was filed on the 19th day of June, 1926, and on that day, a decree was entered directing a re-sale to be made, and that the bidding at such re-sale be started at $1450.00. In the meantime, on or about the 19th of June, 1926, J. L. Ramsey took an assignment from Price of his decree, amounting, with interest, as of that date to $2308.87.

"The special commissioner who made the re-sale reports that he did not advertise and re-sell at once, at the suggestion of J. L. Ramsey, and did not do so until the 7th day of December, 1929, when Lloyd Booth became the purchaser at $975.00. Before the sale, Arthur Sinsel, and Sam Moran, had taken all of the timber off the whole 114 acres of land, for which they received $3600.

"Afterwards, on January 27, 1930, J. L. Ramsey appeared and filed his petition herein, asking to be made a party plaintiff, in lieu of U. S. G. Price, in this suit, whose interest in the original decree of $1600 with interest, he had purchased, to which petition Price appeared and waived process thereon, and admitted in open Court that he had duly assigned to J. L. Ramsey, the decree set out in Ramsey's petition.

"Arthur Sinsel and Sam Moran filed supplemental answers to which special replies were made, and by an order of October 17, 1930, this case was referred to a commissioner in chancery, who filed his report on the 10th of January, 1931, to which several exceptions have been filed.

"It is to be observed that Sam Moran and Arthur Sinsel were both parties to the original and amended bill filed in this case, and were bound by the original decree of sale, entered in 1926. Neither of them after the decree of sale

had any right to denude the lands decreed to be sold of its timber. After the decree of sale was entered the land was in custody of the law, and upon proper notice to the Court, both were in contempt. Neither did petitioner J. L. Ramsey have any right to remove this timber, because, by his assignment of the U. S. G. Price debt, which seems to have been on June 19, 1926, he only had a lien thereon, and an equitable interest therein, knowing at the time that the property to be sold was in the custody of the law. He was a pendente lite purchaser, with full knowledge of the pendency of the suit. The fact that Ramsey consented to the removal of the timber from the Moran land, as is proved by the evidence, shows that he was not justified in refusing to make his bid of $1450 good at the resale of the property.

"But on the question of whether J. L. Ramsey should be held to his upset bid of $1450.00 neither Sam Moran nor Arthur Sinsel can complain for they reduced the value of the land upon which the bid was made by removing the timber therefrom, and are estopped by their conduct.

"As stated, this evidence shows that J. L. Ramsey after he acquired the Price decree consented to the removal of the timber on the Sam Moran interest in the 114 acres. · Arthur Sinsel cut and removed this timber and received half the profits, to which Ramsey consented. * * *

"It is moreover shown by this evidence that on or about the time Ramsey took the assignment of the debt from Price, which was June 19, 1926, Moran borrowed from the First National Bank of Belington a sum of money, amounting to $2308.87, and that J. L. Ramsey went on his note for that amount. This money was deposited in the bank in the name of Ramsey, who paid the same to Wm. T. George, attorney for U. S. G. Price, in payment of the decree which Price assigned to Ramsey. On this note, Sam Moran says there remains unpaid $1058.00.

"Mr. Ramsey did not testify in this case. It should never be forgotten that the debt which U. S. G. Price had decreed against the Moran interest in the lands mentioned in this suit, was paid by money borrowed at the First National Bank of Belington, for which a note was given, and Mr. Ramsey

was merely surety thereon. This fact is proved in the record and undisputed. All the payments that ever have been made on that note have been made by Moran. In equity Moran paid the Price debt, and so far as the record shows Ramsey paid nothing thereon, and the proof is that the assignment of the Price decree to Ramsey was taken as mere security to save him from any liability on the note given to the Belington Bank, which yielded $2308.87, which same money, as heretofore noted, was paid to Price, through his attorney, Mr. George. Now, Moran having paid the Price debt, is entitled to credit therefor, no difference who took the assignment from Price for his decree. Equity looks at substance and not form—at the very right of the case.

"How stands the account between Ramsey and Moran. Commissioner George says he paid Ramsey out of the second sale of the land of Moran $871.05, after deducting commissions and other costs of sale. * * * If there only remains the sum of $1058.00 due on the note in bank, then as between Ramsey and Moran, giving the credit of $871.05, there remains only the sum of 186.95 for which Moran is liable to Ramsey and for which Ramsey is liable on the note.

"Surely, the money that Mr. Ramsey got from the sale of the Moran lands should be charged against him, and it makes no difference that there may be due on the note to the bank $1058.00, still Mr. Ramsey has received $871.05 to pay thereon, leaving only the sum of $186.95 due.

"Mr. Ramsey owes the latter sum only as surety for Moran, and Moran owes him that sum only, and provided, he himself does not pay the bank. If he does pay the bank then he owes Mr. Ramsey nothing, because Ramsey has no money of his own in this transaction but has already received and used of Moran's money $2308.57, borrowed from the Belington bank, and $871.05 from the sale of Moran's lands, the latter amount of which should be applied on the note to the bank. Mr. Ramsey never paid anything out of his own funds in the purchase of the Price decree against Moran, although he took an assignment of that debt. In equity, Ramsey holds that Price debt for the benefit of Moran, and only as security for himself in case he ever pays any of the money borrowed

from the Belington bank by Moran as above related. Such payment he has not made, but all the payments made thereon have been by Moran. Moreover, Mr. Ramsey has had the use of $871.05 for some time that Moran should be credited with. As Moran at the present time does not owe Ramsey anything on account of these transactions, nor on the Price decree above mentioned, because of the facts herein set forth, there can be no decree against Moran in this suit in favor of Ramsey, to enforce the Price decree assigned to Mr. Ramsey.''

For the reasons thus set forth, the bill was dismissed at Ramsey's costs. He appealed from that decree.

We approve and share the chancellor's reasoning. Our only difficulty is with reference to the item of $871.05, being net balance paid Ramsey from sale of Moran's one-half interest in the land. Has this sum actually been retained by Ramsey or has he paid it on the Belington bank debt? The chancellor has found that Ramsey has retained it. The commissioner in chancery found that Ramsey had paid it to the bank. We find the record confusing and entirely unsatisfactory on this point. There ought not to be any serious difficulty in rendering this entirely free of doubt. While ordinarily, of course, the finding of fact of the chancellor will prevail over an opposite finding of a commissioner, there is presented here a situation where it would seem that the pivotal question is capable of being entirely relieved of uncertainty, and in our opinion, that course should be taken.

It is our conclusion therefore to reverse the decree of the trial chancellor and remand the cause for the sole purpose of affording opportunity (1) for a full development of the evidence on the question of whether Ramsey paid the sum of $871.05 or any other sum on the Belington bank debt, and (2) for the entering of such decree on the whole record thus supplemented as to the trial chancellor may seem proper.

*Reversed and remanded.*