GEORGE SHEPARD PAGE, appellant,

*v.*

WILLIAM A. MARTIN, respondent.

1. The specific enforcement of contracts to convey lands is not a matter *ex debito justitiæ.* It is an appeal to the sound discretion of the court. Relief of this character rests, not upon what the court must do, but rather upon what, in view of all the circumstances, it ought to do.

2. A stipulation contained in a lease or other valid contract, that one party shall have the option to purchase lands of the other, is an agreement to convey, and if in other respects fair, will, upon the exercise of the option, be enforced in equity.

3. In every case of specific performance the court is chiefly concerned with the equities of the parties before it. A purely legal defence which, if successful, will result in ceding to a volunteer the improvements put upon lands by an innocent vendee, must be clearly made out by him who sets it up.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

The complainant Page entered into a writing with one Ezra Tolman, by which Tolman agreed to lease and did lease to Page about two acres of land, for five years, with the option on the part of Page to extend it to ten, for the almost nominal consideration of maintaining a line fence along one side of it, this and the adjoining lands being woodland; and with the further option, on the part of the said Page, of buying the same at any time within the period of the said lease by paying $150 an acre therefor, or for *any part* thereof, *say one-half,* to be paid for at the same rate.

The agreement was entered into in August, 1884, and Page at once took possession, and made improvements, and prepared it as and for a place for summer resort for Sunday schools and picnics, and, for the accommodation of those so interested, placed seats for over a hundred guests on the premises.

In December, 1885, the said Tolman was declared to be, and the return shows that he had been for more than two years,

then last past, a lunatic. The guardian appointed under those proceedings sold all of the land in question, notwithstanding the open protest of the said Page, to the defendant in this suit.

Page brings his suit to compel said˙ Martin to convey to him, and thereby specifically perform the agreement which was made with Tolman. The return to the commission reached back beyond the˙ date of the agreement and lease, and therefore the burden of showing that the return is untrue in point of fact, or that the then lunatic had lucid intervals, and that he especially had them at the time of the execution of˙the agreement in question, is upon the complainant. And, in my judgment, this obligation has not been so˙ met as to justify me in advising that this contract should be specifically performed. And it is, perhaps, my duty to say, that, independently of the finding of the commission, the weight of the evidence, I think, is with the defendant. I am strongly inclined to think that Ezra Tolman was not in his right mind, or, if not so depraved by disease or bad habits as to be denominated a lunatic, he was so weakened and˙ overcome as to be incapable of contracting.

For a long time prior to this Tolman had been in the habit of taking intoxicating drinks so constantly as to keep himself in a stupor, while he was not perhaps so overcome by the habit as not to be able to move about. And while this is so, it is perfectly clear, from the testimony, that his conduct showed other influences, or perhaps results, upon his mind different and more to be dreaded than the first effect of drunkenness. This was exhibited in his strange conduct respecting his horse and a cow, and other conduct in and about his own home, and his total indifference to his own interests, for some time before this agreement was signed. Besides this, the physicians who saw him at the time of the inquisition pronounced his case one of *dementia*, which may have been of long standing, though of slow development. And these same considerations make quite a strong bar to the effort to show that, at the time of the execution of the contract, Tolman, then about sixty-five years of age, was in his right mind.

And these views are more than a little enforced by a careful analysis of the contract itself and the attending circumstances, as they appear in evidence.

1. The contract shows that the word "thirty" has been stricken out and "one hundred" inserted, thus increasing the width of the passageway from thirty feet to one hundred, without any additional consideration; and what is more, it appears that Tolman consented to this upon request merely, without any parleying or demand for additional compensation. This leads me towards the conviction that he did not have any adequate notion of his own interests.

2. The agreement shows that Tolman executed the lease to Page for five years for these two acres with the privilege to Page of extending it to ten, for the very trifling consideration of maintaining a line fence, such as already mentioned, when the land itself was valued by Page at $150, or, for the whole, $300, the interest of which would be $18 yearly. This, again, seems to me to be so unbusinesslike, that I cannot but feel quite assured that Tolman had so lost his mind as to have no conception of values.

3. The provision in the agreement that Page "shall have the option to purchase the described tract and the right of way strip at any time during the continuance of this lease, for the sum of $150, or any portion of the tract in the same ratio of value, say one-half the tract," is of no little consequence in a matter of this kind, since it gives to Page the right of selecting the half that he will take on either side or in the middle, without any reference to the quality of the parcels or parcel that might be remaining. It does seem to me that the making of such contract, first disposing of all his interest in the land for ten years, without anything more than a mere nominal consideration, and then of the fee of the whole or any half, is quite strong proof of such mental imbecility as requires the protection of the court.

4. I am satisfied that one of the inducements held out by Page to Tolman was, that he intended to use these grounds as a place of public resort, not only for himself and his friends, but for the public generally, and that it would be a pleasant place for hold—

Page *v.* Martin.

ing picnics and other similar gatherings. And besides the testimony on this point, the fact that Page fitted up the grounds accordingly, lends great strength to the view that this was part of the consideration held up to Tolman's mind. But it is very significant that no mention at all is made of this in the lease or agreement of sale, nor is there any mention made of it in the bill. It is quite plain, that a man in his senses would have had such an important element in the consideration expressed in the writing. Indeed, I am not sure but that this is vital, going to the very foundation, and rendering it impossible for the court to decree a specific performance of the contract, since it is not a completed one, an important term having been left out of the writing. It may well be that, if Tolman was able to have any conception of the case at all, he was willing to surrender the care of so much of his property, without any consideration, to Page, if both himself and his neighbors were to have the beneficial use of it to so large an extent.

I will advise that the bill be dismissed, with costs.

The following is the agreement referred to in the opinion :

"STANLEY, N. J., July 30, '84.

"In consideration of his keeping the line fence dividing my land from that of the property now occupied by S. R. Bissell, also exclusive right of way over a strip of land adjoining said Bissell's line fence one hundred feet wide from the river to said woodland for the term of five years from August 1st, 1884, with the privilege of five years additional on the same terms, it is further agreed, that the said Page shall have the option to purchase the desired tract, and the right of way strip at any time during the continuance of this lease for the sum of one hundred and fifty (150) dollars per acre or any portion of the tract in the same ratio of value, say one-half the tract for one-half the sum stated.

"In case of the sale or mortgage of the farm by me this tract is to be excepted. The said Page is permitted to erect a boat-house and make such other improvements as he may deem advisable.

"He is also permitted to enclose it by a wire, barb or other suitable fence, to be kept in repair at his sole expense.

"(Signed)        "EZRA G. TOLMAN,
                 "GEO. SHEPARD PAGE.

"Witnesses: JAMES McGUINE."

*Mr. Thomas N. McCarter*, for the appellant.

*Mr. Theodore Runyon*, for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The bill was for the specific performance of an agreement to convey lands. The attitude of courts of equity upon applications of this character may be summarized in two propositions— *first*, that the relief invoked is not a matter *ex debito justitiæ*, but rests in the sound discretion of the court, and, *second*, that where a contract is certain in all its parts and for a fair consideration, and where the party seeking its enforcement is not himself in default, it is as much a matter of course for courts of equity to decree the performance of the contract, as it is for courts of law to give damages for the breach of it. That relief rests not upon what the court must do, but rather upon what, in view of all the circumstances, it ought to do, is a distinction which is of little or no practical moment. In every case of this character the court is chiefly concerned with the equities of the parties before it. In the present case, the party seeking the enforcement of specific performance grounds his right upon a written contract made with the owner of the lands, under the supposed protection of which he entered into possession of the premises and laid out a large sum of money in their permanent improvement. Resistance comes not from the owner, but from one who, with full notice of the above facts, purchased the lands, and is based solely upon the alleged incapacity of the owner to make a valid contract. The dismissal of the complainant's bill under these circumstances does not inure to the benefit of him whose incapacity furnished the sole ground for the action of the court. In the absence of fraud, its effect is simply to transfer the improvements from him who innocently made them to a speculative volunteer. The defence, being a purely legal one, must be clearly made out by him who sets it up. The decree in the court of chancery dismissed the bill with the results above indicated. This appeal

questions whether such a disposition of the case does complete justice between, the parties. The facts necessary to an understanding of the original transaction are briefly these : One Ezra Tolman, who was the owner of two acres of rough land adjoining his other property, entered into a written agreement in respect to said lands with Page, a neighboring proprietor. After the delivery of this writing Page enclosed the tract with wire fencing, and, with the approval of the owner, expended nearly $700 in the construction of a boat-house and in otherwise fitting the premises for a pleasure park and picnic ground. This was in the spring of 1884. In December of the year following Tolman was, upon an inquisition of lunacy, determined to be of unsound mind, and in 1887 his guardian obtained an order for the sale of his·lands, and among them, the lands in the possession of Page under the said agreement were offered for sale. Previous to the sale of these lands, Page notified the guardian that, in the exercise of the option contained in his agreement with Tolman, he desired to take title to the said lands, and tendered himself ready to make payment therefor according to the terms agreed upon. At the sale Martin, who is the sole defendant in this suit, became· the purchaser at precisely the same price which Page had agreed to give. Before the bidding began Martin was notified by Page of his said agreement and of the other facts above stated. A deed for the lands was delivered by the guardian to Martin, but without general covenants of title. Page then tendered to Martin the full sum which Page was to pay and which Martin had paid, and, upon his refusal to convey, filed his bill in the court of chancery.

The evidence as to Tolman's general incapacity to transact business in 1884 was so slight, that we must assume what indeed was evident from the conclusions of the vice-chancellor who heard the case, that the main ground for declaring void his contract with Page is its supposed inadequacy of consideration. The inadequacy which thus becomes the controlling feature of the case will, upon examination, be found to attach solely to the leasehold interest and easements which Page was to enjoy prior to the exercise by him of his option to purchase, and even upon

Page *v.* Martin.

these points all inadequacy vanishes, in view of the large sum of money immediately expended by the lessee upon the lands of his lessor. Where a tenant with power to purchase expends in one year on the permanent improvement of the land double its entire purchase price, it is a refinement of technicality to say, that all of his rights shall be lost because he was not, by the terms of his lease, compelled to make these improvements. The jurisdiction now exercised concerns itself solely with that which conduces to justice. Moreover, the terms of the lease are before us only as evidence of mental incapacity on the one hand or of *mala fides* on the other. For all other purposes that portion of the contract is excluded and passed. The insistment is, not that the agreement was unfair or disadvantageous, as understood and performed between the parties to it, but that it is evidence of inability to contract, because advantage might have been taken of some of its provisions by a person less scrupulous than the complainant. The agreement in question actually resulted in changing a piece of land valueless to its owner into improved property, so that in any event the owner became assured of receiving the full value of his land, for, if the purchase fell through, he still had the land, permanently improved beyond even the purchase price. So that, if we are to judge of Tolman's business capacity by the only transaction fully before us, it indicates at least average shrewdness and foresight. As to *mala fides* on the part of Page, the contract is singularly at variance with such a notion. It being admitted that he was not compelled to put the improvements upon the land, the fact that he did so is the strongest possible proof of good faith upon his part. If we look to the part of the agreement which concerns the purchase of the land by Page, it bears the same evidence of entire fairness. The price agreed upon was $150 an acre, which, according to the testimony, was all that it was worth. Moreover, with what force can this price for the bare soil be criticized by one who himself gave precisely the same price for the same land after $700 had been expended in its improvement? It will not, I think, be contended, that a decree which cedes these improvements without consideration to a mere volunteer with notice is compelled by the equities of the

case, or that it does complete justice to the parties to this dispute. I cannot avoid the impression that the agreement has been viewed too rigidly as a lease and too little as a contract of sale, in which latter aspect we are now solely concerned with it. The criticism of the court below and much of the argument of counsel cease to be significant when the contract is regarded in this latter light. Thus viewed, it is a contract of sale, plain and fair in all its parts, whereby the owner agrees to sell for a full price land valueless, or even an expense to him, and by which the vendee is given a period of option, during which time he is to save the owner harmless and bear himself all of the expense of care and improvement. If there is anything harsh or suspicious in such a transaction, I utterly fail to perceive it. If Page's object had been to acquire the land for an inadequate price (and unless this was a possible result of his contract, the case against him falls to the ground), he must have known that to a man of Tolman's habits a cash sum much smaller than the purchase price, to say nothing of the improvements, would have been the surest means of accomplishing his object.

The result reached in this court is, that Page had a contract fair in all its parts; that Tolman's incapacity to make such a contract is not shown; that Page, in *bona fide* reliance upon this contract, improved the property and was entitled to a deed upon tender of the purchase-money; that Martin purchased with notice of the facts out of which complainant's rights grew, and that complete justice will be done to the parties to this suit by a decree that Martin deed the property to Page upon payment of the price paid by him for said lands, without interest.

Upon the argument it was insisted, that the contract set out in the bill could not be enforced because it lacked mutuality of obligation. In so far as this contention rests in matter of law, the proposition is, that a contract to convey, which at its inception contemplated an option in the vendee, cannot be enforced by him after an affirmative exercise of the option because, prior to its exercise, he was under no obligation to purchase. In support of this contention the case of *Hawralty* v. *Warren, 3 C. E. Gr. 124,* is cited. That case was, it is true, almost identical with

the one now before us, but, so far from supporting the proposition for which it is cited, it is diametrically opposed to such an insistment. The language of Chancellor Zabriskie in that case is as follows: "It is now well settled that an optional agreement to convey, without any covenant or obligation to convey and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be a true consideration for it." This case was afterwards cited by the chancellor (Runyon) in *Scott* v. *Shiner*, *12 C. E. Gr. 187*, as an authority for the doctrine, that a stipulation that a party shall have an option of purchase is equivalent to a conditional agreement to convey.

The complainant's case must be deemed to be before us for consideration upon its merits.

Let the record be remitted, in order that a decree may be entered in accordance with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, COLE, SMITH—10.