DANIEL R. LEAN, JR., respondent,

*v.*

ANNIE LEEDS, appellant.

[Decided February 28th, 1921.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"I shall not undertake at this time to dispose of this matter finally; further reflection or suggestion of counsel by way of brief, if counsel desire to be heard further, may change my views. At this time, however, I wish to outline my views sufficiently to enable counsel to at least apprehend the present condition of my mind in the matter.

"I am unable to see at this time any possible defence to this case, unless, perchance, it be a defence growing out of the mental condition of the defendant—the want of intelligent and voluntary action upon her part at the moment she signed the contract of sale. The contract in its terms embodies all the essen-

tial elements of a contract for the sale of real estate and is signed by the party to be charged. The only element ordinarily embodied in such contracts which is absent in this is the element of time for final payment and final delivery of the deed, but that element is not essential, so far as the express terms of the written contract is concerned, because in its absence a reasonable time will be implied. The receipt discloses that part of the contract price was paid at the time the contract was made; the balance was necessarily to be paid later, and a reasonable time for such payment is necessarily implied. Where, as here, a title company is employed at once to examine the title and that company finishes its examination in the time that the examination of title was finished in this case, and the vendee at that time tenders performance he has, in my judgment, made his tender within a reasonable time.

"I am unable to see how complainant is in any way either aided or injured by his attempt to show that a stipulation was made that the money should be paid and the deed delivered after the title company had passed the title. The claim is made and denied that such a stipulation existed, and that it was a part of the agreement and was made at the time the writing was signed; it is incompetent for complainant to supplement the contract in that manner, because the writing cannot be added to or substracted from or contradicted in any way, it must be taken on its face for what it says, either expressly or by adequate implication. As already stated, the writing discloses a partial payment of the price; the privilege to pay the balance in a reasonable time is adequately implied.

"The circumstance that the contract is in form unilateral is not, in my judgment, a possible source of defence. Where the owner of property signs a writing in which he agrees to convey upon adequate consideration and terms it is unnecessary that the vendee should sign the contract. It is true the vendee is not at that time bound to perform, because he has not in writing bound himself to perform, but when his bill is filed for specific performance of a contract he does become bound and is equally bound with the vendor.

*92 N. J. Eq.* Lean *v.* Leeds.

"So, so far as I can at present see, the only question involved in this case which to my mind presents any doubt is whether at the time the contract was signed defendant vendor acted with intelligence, whether the contract represents intelligent and voluntary action upon her part. I confess that on that question it seems to me there cannot be very much doubt. There is no evidence in this case that indicates that the vendor was not entirely normal and capable of normal action at that time. It is true, she says, and her daughter-in-law also says, that she was largely influenced by her son and daughter-in-law desiring her to agree to sell, but even that, it seems to me, would in no way render the contract, otherwise unobjectionable, unenforceable. Obviously, she would be necessarily more or less influenced in her action by the wishes of those around her who were near and dear to her, her son and her daughter-in-law. It is right, proper and natural that she should be. Indeed, she had asked the vendee to await further negotiation until her son returned, in order that she could consult him. Unless she was wanting in mental capacity or was subject to the influence of those around her to an unreasonable degree, and I do not think the evidence discloses either, it seems to me that the contract is enforceable.

"The other question which Judge Cole has presented very elaborately and very forcefully relates to matters arising subsequent to the contract. It appears to be true that this contract has been the cause of almost mentally unseating defendant; its existence has brought her to an extremely nervous condition. After signing the contract further reflection upon the subject led her to feel that she had done wrong not in agreeing to sell the property for less than it was worth, but in that she had done wrong in parting with an old home that she had inherited from her husband and had occupied for so many years. That thought, that purely sentimental thought, worked upon her nerves until she has almost gone into melancholia. There may be a danger, if the doctor is not extreme in his views, that an adverse decree in this case may be more or less dangerous to her mental condition, and I confess that if there is to be found any field of discretion in a court of equity in granting relief in this case that will justify the refusal of a decree because of its possible effect

on defendant's nerves, the court is inclined to avail itself of that discretion in circumstances of that kind; but I shall need to be convinced that the sound discretion which is regarded as a prerogative of a court of equity in granting a prayer for a decree of specific performance extends so far. The consequences of a decree, it is true, should in some circumstances be considered; but the mere fact that a defendant has allowed herself to get worked up to such a nervous state over her contract cannot, it seems to me, afford justifiable grounds for a court of equity to exercise a discretion in refusing a decree which complainant would otherwise be clearly entitled to. The sound discretion which is so frequently referred to in cases for specific performance I understand to be largely a technical term; it is essentially the exercise of a sound judgment based upon right and justice in accordance with defined equitable principles as established by precedents in cases of this class; the established principles must control the discretion. A court of equity is not permitted to disregard established equitable rules in the exercise of its discretion in cases of this class, the discretion to be exercised must be a judicial and not a capricious discretion; and unless counsel can convince me by some authorities which may be cited, in case a brief is sought to be filed, that the exercise of a discretion of this court in refusing this decree can find legal justification because of its possible and, I, perhaps, may say, probable detrimental influence upon the mental condition of defendant, owing to the nervous state she has reached in contemplating the loss of her old home, it presently seems to me I shall be obliged to advise a decree for performance.

"Mr. Cole—Now, vice-chancellor, shall the brief be limited to that latter question?

"The Vice-Chancellor—Brief the whole subject; I shall hold my mind open on the whole case.

"Mr. Perskie—Will your honor designate any special time?

"The Vice-Chancellor—If you can do it within a week—say by the middle of next week.

"Mr. Cole—I am willing to hand Mr. Perskie a brief within a week or ten days.

"SUPPLEMENTAL.

"I am satisfied that complainant is entitled to a decree for specific performance. The contract was intelligently and fairly made and is just, reasonable, fair and equitable in all its parts. Complainant has come into court with perfect propriety of conduct and cannot, in my judgment, be dismissed merely because defendant has changed her mind and reached a highly nervous condition because, for purely sentimental reasons, she does not now wish to perform her contract.

"Mr. Fry, in his work on Specific Performance, states the rule to be, without limitation or exception, that if a contract is fair and unobjectionable at its inception, no change of circumstances or relations or events, however unexpected, and however much inequality and hardship they may produce in the operation of the agreement, shall constitute a sufficient ground for denying the remedy of specific performance. *Fry Spec. Perf.* §§ *235, 252.*

"There appear to be some cases affording exceptions to the rule thus broadly stated, but I find no authority that tends to support the view that matters arising subsequent to the contract with which complainant is in no way connected or responsible for, and which alone concern the personal interests, as distinguished from the pecuniary interest, of defendant, can be made the basis of defence to a suit for specific performance.

"I feel obliged to advise a decree pursuant to the prayer of the bill."

*Mr. Joseph B. Perskie,* for the respondent.

*Mr. Clarence L. Cole,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—The Chief-Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Katzenbach, White, Heppenheimer, Williams, Taylor—13.

*For reversal*—None.