On March 30th, 1920, a written agreement was entered into by the complainant, on one hand, and by certain officers and trustees of the defendant, on the other hand, wherein the latter demised to the former certain lands and tenements for a period of five years from the first day of April, 1920, at a yearly rent of one dollar, payable in advance, "and at the additional yearly rent of all taxes, assessments, water-rents and other municipal liens and charges levied and assessed against said premises, and the interest coming due and payable upon a certain mortgage of $15,000 upon said premises." The defendant also, in consideration of the premises, covenanted to keep the demised premises in good repair and make improvements at its expense of not less than $4,000. It also agreed to keep the buildings thereon insured against loss by fire in the sum of not less than $24,000, with loss, if any, payable to the defendant. Complainant also agreed that it would not underlet or assign the lease without the written consent of the defendant. It is then provided that in case of non-compliance with any of the covenants, or upon failure to pay the rent reserved, or if the demised premises should become vacant, the defendant might re-enter and recover possession thereof.
There was also incorporated in the lease an option in favor of the complainant —
"At any time during the term herein, on thirty days' notice, in writing, to purchase the herein demised premises, for the sum of $24,000, payable $5,000 cash, $15,000 by assuming said $15,000 mortgage held by the West Hudson County Trust Company, Harrison, N.J., and the balance $4,000 by execution and delivery of a purchase-money bond and mortgage, with usual covenants, in that sum, payable in one year, with interest at the rate of five per cent. per annum, payable semi-annually; and upon the completion of any such purchase, this agreement shall thereupon and from thenceforth become terminated."
In the month of June, 1924, a suit in equity was commenced in the United States district court for the district of New Jersey, under the provisions of the so-called Volstead act against the complainant and defendant as lessee and lessor, *Page 75 
respectively, to enjoin the use of the premises described in the above-mentioned agreement. With its answer the defendant filed a cross-bill, praying a forfeiture and a cancellation of the said agreement or lease. The decree in that cause directed a forfeiture of the lease, so far as it related to one of the structures upon the demised premises which has been designated in the present proceeding as a "hall building."
The decree in the district court, however, specifically excluded any finding or ruling as to the option to purchase. It is not denied that the decree in the United States court is conclusive as to the violation of the National Prohibition act before July, 1924.
On July 25th, 1924, an effort was made on behalf of the complainant to serve a notice upon the defendant that the complainant would exercise the option contained in its lease at any time on or before August 25th. There was some difficulty, due to the illness of the bishop of the diocese, one of the members of the board of trustees of the defendant. But any attempt to base a defense upon the fact that the notice was left with a member of the bishop's household and not delivered to him personally on his bed of illness is captious, ultra-technical and should not be given the slightest consideration. Furthermore, the document was immediately transmitted to the general counsel of the diocese, the person upon whom the bishop would have certainly relied for the protection of the rights of the defendant.
The main defense, and one that has caused me great perplexity, is the one in which the defendant assumes the position that the violation of the National Prohibition act worked a forfeiture of the lease and, hence, of the option to purchase. That the violation of that act did effect a forfeiture of the lease of a portion of the demised premises, described in the decree entered in the suit in the federal court is, of course, undeniable. It is very significant in that connection that the learned and experienced judge who presided expressly limited in the decree the forfeiture of the lease only so far as it applied to the hall building, and excepted from its operation *Page 76 
the option to purchase contained in the lease. His reason for so doing was clearly explained by his language in the rendition of his oral opinion when he said:
"The option for a purchase, as I see it, is to be treated distinctly and separately from the leasing part of this contract. The statute only says `forfeiture of the lease.' Now, of course, generally we look upon the whole document and say it is a lease with option to purchase, but there are two different contracts. One is a letting and the other is that the lessee shall during the term of the letting upon certain conditions have the option to buy. Now, I will construe those two things as independent, and that the option feature of this contract is not within that part which I term here the lease, and would not be subject to forfeiture."
As Judge Rellstab says, there is much looseness in the use of the term "lease," liable to create some confusion. The subject is dealt with in 1 Tiff. on Real Prop. (2d ed.) § 39. 2 Bl.Com. 317, says:
"A lease is properly a conveyance of any lands or tenements [usually in consideration of rent or other annual recompense] made for life, for years or at will, but always for a less time than the lessor hath in the premises."
The word is less properly used to denote not only the conveyance of an estate less than the fee, but to include the various contractual obligations created between the parties in connection with the conveyance proper which for a number of reasons it is found more satisfactory in the more or less complicated modern instruments to include therewith over but one signature of each of the parties concerned.
In Matthews Slate Co. v. New Empire Co., 122 Fed. Rep. 972, an instrument of lease was entered into whereby the defendant leased to the complainant the right to work certain slate quarries in the State of New York for an annual rental and with a number of covenants for the benefit of the defendant (the lessor), with the right of re-entry on the breach of any of them. Following this reservation there was contained a sufficient option to purchase, upon the payment of the sum of $20,000 by the lessee. Some years thereafter, *Page 77 
but before the time within which the option was required to be exercised, the defendant served notice of forfeiture and a demand for possession of the premises for several breaches of the covenants committed by the complainant. Thereupon, a bill for specific performance of the option was filed. It was determined by the United States circuit court of appeals that the option was an entirely separate instrument from the lease proper and the covenants accompanying the same. In the case in hand, there was a recital in the option that it was executed in consideration of the sum of "one dollar and other valuable considerations," and the court, therefore, found that the consideration for the making of the option was not the entering into the lease by the lessee, and so that there was no failure of consideration. This difference is of great importance in the case at bar.
The option contained in the lease executed by the defendant thus must be considered as a separate and distinct bargain between the parties from the lease proper. Now, it is elementary that an option to convey land is a contract which is enforceable, under proper circumstances, in this court. Page v. Martin,46 N.J. Eq. 585. But, unfortunately, such a contract, like any other, is nudum pactum and unenforceable unless there is a consideration. It will not be argued that any promise to convey real estate, even if expressed in writing, signed by the proposed grantor and executed in the most solemn manner, will bind the owner of land if it is a mere gracious promise upon his part without any consideration therefor inuring to the benefit or detriment of anyone. In Matthews Slate Co. v. New Empire Co.,supra, it is expressly pointed out that the option itself contained a recital of the consideration upon which it was based. In the case at bar the language is as follows:
"It is further covenanted and agreed between the parties hereto, that the said second party shall have the option at any time during the term hereof, on thirty days' notice, in writing, to purchase the herein demised premises for the sum of $24,000, payable $5,000 cash, $15,000 by assuming said $15,000 mortgage, held by the West Hudson County Trust Company, Harrison, N.J., and the balance, $4,000, by execution and delivery of a purchase-money bond and mortgage, with usual covenants, in that sum, payable in one year, with interest *Page 78 
at the rate of five per cent. per annum, payable semi-annually; and upon the completion of any such purchase, this agreement shall thereupon and from thenceforth become terminated."
From this it will be seen that there was no express consideration and, therefore, it becomes evident that the true consideration was the execution of the lease and, it necessarily follows, the continuance thereof and an abiding by its terms on the part of the complainant. That there was no substantial violation of the covenants by the complainant, I think is clear. There was a harsh attempt to prove that the complainant had underlet a part of the premises, but it seems to me that it would be most inequitable to declare this a breach, because, under the circumstances, it must have been realized that a vital part of the management of the demised premises would require just such action in order to make it possible for the complainant to continue in possession without a severe loss. And, further, this went on for a number of years under the very eyes of the defendant's officers and agents without any notice of it or protest to the complainant, and it is too late now to hold the latter to the strict literal language in the lease.
However, it seems unescapable to me that when the complainant permitted a violation of law which resulted in a forfeiture of a part of the lease there remained no consideration for the option. The lease must be considered as a single entity which must either exist in toto or suffer complete destruction. It is impossible for a portion of it to be canceled and leave the remainder as a consideration for the option. To do so would have the effect of writing a new contract for the parties to which one of them will not agree. Unfortunately, the violation of the National Prohibition act must have been prior to the attempt of the complainant to acquire the fee. While I have not the exact dates upon which the violations were proved in the federal court, it must have been prior to the 25th day of July, 1924, when the notice was served, because the government's bill was filed in the preceding month, and upon that bill the decree was entered in the following February.
For the reason just set out the bill should be dismissed. *Page 79