The defendant Greenwood Avenue Realty Co. is a close corporation with an issue of one hundred shares of stock, the only stockholders being Helen B. Hildinger (who is a complainant herein), James Lamont and Gertrude H. Bishop (who are defendants) and Isaac Levy and Philip Blaustein, the five stockholders owning twenty shares each. The shares are not procurable in the open market and their value is not readily ascertainable.
June 6th, 1938, the defendant Gertrude H. Bishop borrowed $6,000 from the defendants James Lamont and Margaret Lamont, giving them her note whereby she promised to pay the borrowed money one year from said date with six *Page 336 
per cent. interest and she pledged and delivered to the lenders her twenty shares of Realty Co. stock as security for payment of her note. The same day she executed an option agreement to the Lamonts (therein designated as optionees), for the stated consideration of $1, whereby she agreed not to dispose of her said shares for a period of five years, until she had first offered them to the optionees at a price to be named by her and that the optionees should have thirty days in which to determine whether to accept her offer. The option agreement contains other provisions to which reference will be made hereafter.
March 9th, 1939, Mrs. Bishop acknowledged in writing the receipt of $500 from complainants Helen B. Hildinger and Frank Henry on account of $22,500, purchase price for her said stock and agreed to deliver said shares to said purchasers on or before March 17th, 1939, on payment of the balance of the purchase price. That agreement to sell was made without first offering said shares to the Lamonts and without their knowledge; also without knowledge on the part of Mrs. Hildinger and Henry of the option agreement Mrs. Bishop had executed to the Lamonts. Six days after Mrs. Bishop had made her agreement with complainants, an offer was made to the Lamonts on behalf of Mrs. Bishop or complainants, to pay off the Lamont loan, and return of the pledged shares was requested, which offer and request were declined by the Lamonts except upon condition that they should inscribe on the certificate for said shares, a notation that the stock was subject to the option of June 6th, 1938, held by them. Payment of the note on such condition was not made and three days later the complainants filed their bill herein against Mrs. Bishop, the two Lamonts and the Realty Co. alleging that the option given the Lamonts was invalid and void; that it had been assigned to the Realty Co. and praying that the Lamonts and the Realty Co. be ordered to deliver the stock in question to Mrs. Bishop and that she be ordered to transfer it to complainants on payment to her of the balance due under her agreement with complainants.
The Lamonts answered asserting a prior right to have the stock under the terms of their option as against complainants' *Page 337 
claim thereto. They also filed a counter-claim against Mrs. Bishop and complainants wherein they set out their option and alleged that their first knowledge that Mrs. Bishop was willing to sell her stock for $22,500, was obtained on March 15th, 1939, when offer to pay their note was made; that two weeks later they made their offer in writing to Mrs. Bishop to purchase her stock for that price and that they are now ready to pay her that sum, less the amount due on their note. They pray that Mrs. Bishop be decreed to specifically perform the option she gave them and that her agreement with complainants be decreed of no effect against them (Lamonts).
Mrs. Bishop by answer joined in complainants' prayer for relief and she answered the Lamonts' counter-claim and counter-claimed against them and the Realty Co., admitting that she had received the offer made by Lamonts to pay $22,500 for her stock and alleging that when she entered into her option agreement with the Lamonts she was informed by their representative then acting for them, that the term of the option was co-existent with the loan the Lamonts had made her and that she did not understand it was to run for five years; that she received no consideration for the option and therefore it is void, and that it is also void because, when she borrowed $6,000 from the Lamonts she agreed to repay that sum with six per cent. interest, being the maximum lawful rate, and that the execution of her option was in addition to lawful interest and contrary to the usury statutes. She prayed that her option given the Lamonts be declared invalid and that they and the Realty Co. be ordered to surrender her certificate of stock without any inscription thereon referring to their option, upon payment of the balance due on her promissory note with six per cent. interest.
The Realty Co. by answer admitted that since the bill of complaint was filed it had acquired the Lamonts' option to purchase the shares in question at the same price the Lamonts agreed to pay for the stock.
There is no serious dispute as to the circumstances under which the option was given or, save in one respect, as to agreement on its provisions. Mrs. Bishop needed $6,000 and when she applied to Lamont for a loan, offering her stock as *Page 338 
security, he told her he would think it over. A few days later he informed her he would make the loan and made an appointment to meet her at his lawyer's office to complete it. I believe they met there on the morning of June 6th, 1938 (although Mrs. Bishop said she thought no meeting was held until the afternoon of that day) and the terms of the loan were then discussed and settled. Lamont had brought with him Isaac Levy and Philip Blaustein, two fellow stockholders in the Realty Co., whom he had informed of his intention to make the loan. They were not interested in the loan and I think they were present in the hope of inducing Mrs. Bishop to option her stock. After the terms of the loan had been settled, they and Lamont told her they did not want an outsider coming into the company and they asked her for the first chance to buy her stock in case she intended to sell and she agreed, without objection. The terms of an option were then discussed (except the period for which it should run), and settled. Mrs. Bishop was given a dollar as a binder on the option and the parties left the lawyer's office to return that afternoon after he had prepared papers to carry out the two transactions. The same persons were present in the afternoon and the lawyer produced the collateral note and option agreement, both typewritten, which he had prepared in triplicate. They were read aloud to the parties, Mrs. Bishop following the reading from copies in her hand, and were found satisfactory to all, but the option agreement stated no term for which it was to be effective, and it is here that the only dispute arises between the parties over the contents of the option. Mrs. Bishop is intelligent and has had some business experience and she admitted that, except as to the period for which the option was to run, its terms were fully understood by her and that she had no objection to them. In fact it appears that she was always willing to have the option stand until she was ready to pay off her note.
On the question of the term of the option, the testimony for the Lamonts was that of Lamont himself, Isaac Levy, Blaustein and the lawyer. They testified that Mrs. Bishop agreed to a five-year term and that words to that effect were then typed in the option at the end of a paragraph, before *Page 339 
she signed. Her testimony denied that she agreed to such term and she said that the five-year provision was not in the option when she signed it. The further testimony for the Lamonts is that she was given a copy of the note and the option that afternoon after she had signed both papers. She admitted receipt of a copy of her note but could not recall whether she got a copy of the option at the same time and she said she thought she received such copy a few days later and that she put it away without reading it. The copy she received was produced by her; it contains the words providing for a five-year term and it is my belief that those words were written in the option with her consent before she signed it.
The term for which her note was to run was one year from June 6th, 1938. If she understood that her option was good for the same term as her note, or until she had paid it, she breached the option as so understood, by entering into an agreement March 9th, 1939, to sell her stock to complainants. The note had three months still to run and she was not prepared to pay it off until she could complete her sale to complainants and use their money to pay the Lamonts. While the note remained her undischarged obligation she was bound, according to her understanding of the Lamont option, not to agree to sell her stock to anyone without first offering it to the Lamonts at a stated price and then the Lamonts had thirty days in which to determine whether to accept her offer.
The burden of proof to establish usury is on complainants and Mrs. Bishop, and that the option was really a corrupt bargain to contravene the usury statutes must be proved beyond a reasonable doubt. Stein v. Wittmer, 117 N.J. Eq. 535. The option agreement was a distinct transaction on a consideration paid to and acknowledged by Mrs. Bishop and the testimony fails to show that it was demanded as a consideration for the loan, or as something in addition to the maximum lawful rate of interest Mrs. Bishop agreed to pay for the use of the Lamont money. It is conceded that when Lamont agreed to make the loan he said nothing about an option and Mrs. Bishop testified that no one told her that the grant of the loan was conditioned on giving an option; also that she understood the loan would be made whether or not *Page 340 
she executed the option. The option is an agreement to sell stock at a price to be determined in a manner satisfactory to Mrs. Bishop. The securing of it cannot be said to have contemplated a certain gain or profit to the Lamonts in case they exercised it, since they were bound to pay the price as determined or lose their right to purchase. Ramsey v. Morrison, 39 N.J. Law 591.
The final question is whether specific performance of the Lamont option should be decreed. It is a unilateral contract by which Mrs. Bishop bound herself to sell but the Lamonts were under no obligation to buy. By its terms Mrs. Bishop agreed to offer her stock to the Lamonts at a price which, within thirty days, they could accept or refuse to pay. If they refused to pay that price, but signified a desire to buy, they were given the right to have the question of purchase price submitted to arbitration and they had thirty days within which to accept or decline to pay the price so fixed. If they declined, the option was terminated but if they accepted the arbitrators' finding, Mrs. Bishop was bound to sell.
The option is under seal which imports a consideration. In fact Mrs. Bishop received $1 in cash before she signed it and the testimony satisfies me that she also received a check for $1 at the time she signed, which check she failed to cash. The consideration for the option was agreed to by Mrs. Bishop and it is sufficient to support it especially if the Lamonts purchased the stock, they were to pay full value as determined in a manner satisfactory to Mrs. Bishop. Ten Eyck v. Manning, 52 N.J. Eq. 47; McCormick v. Stephany, 57 N.J. Eq. 257.
As has been said, the Lamont option was given voluntarily and Mrs. Bishop was in complete accord with all its terms save, as she contends, with the term for which the option was to run. Her agreement to sell to complainants is nothing more than another option, since thereby she agreed to sell and it does not bind the complainants to buy but it serves to fix a price at which she was willing to sell her stock. Had she been acting in good faith with the Lamonts, she should have apprised them of complainants' offer and she should have given the Lamonts the opportunity to buy at the price *Page 341 
offered. When the Lamonts learned that she was willing to sell her stock for $22,500 they offered to pay her that sum and that offer created a contract binding on both parties and by their counter-claim, tendering willingness to perform on their part and praying performance by Mrs. Bishop, the Lamonts made the option a bilateral contract. In that situation it would be inequitable to grant relief to the complainants and deny relief to the Lamonts when the rights of the latter are prior in point of time.
In exercising the sound discretion this court has to withhold the relief of specific performance of a contract, the court must act with justice and fairness toward the purchaser when it appears he has dealt openly and fairly with the seller and to have taken no advantage of the seller in concluding the bargain, especially where it appears that the bargain was at the time understood by and was satisfactory to the seller. Page v.Martin, 46 N.J. Eq. 585; Lean v. Leeds, 92 N.J. Eq. 455;Elmora Development Co. v. Horwitz, 2 N.J. Mis. R. 694;130 Atl. Rep. 651; affirmed, 98 N.J. Eq. 690; Williams v. M.E. BlattCo., 95 N.J. Eq. 326.
An option to sell without any obligation to purchase is enforceable in equity against the optioner, if made upon proper consideration (Hawralty v. Warren, 18 N.J. Eq. 124; McCormick
v. Stephany, 61 N.J. Eq. 208; Crandall v. Graham, 93 N.J. Eq. 675; Kastens v. Ruland, 94 N.J. Eq. 451) and this rule applies to a contract for sale and purchase of personal property (Law
v. Smith, 68 N.J. Eq. 81), including a contract for sale of corporate stock not procurable in the market and its pecuniary value not readily ascertainable. Safford v. Barber, 74 N.J. Eq. 352; Bronsdon v. Shupe, 98 N.J. Eq. 67; affirmed, 99 N.J. Eq. 449.
I conclude that the complainants should be denied the relief for which they pray and that their bill of complaint should be dismissed; that Mrs. Bishop's counter-claim should be dismissed and that she should be decreed to transfer her stock to the Lamonts on payment by them to her of $22,500 less $6,000 due on her note to the Lamonts, with interest, and less also $500 with interest, which the Lamonts shall deduct from said purchase money and pay to the complainants to *Page 342 
reimburse them for a loan made by them to Mrs. Bishop pending this suit, as provided for by filed stipulation of all parties. If the parties cannot agree on the amount of interest due on the Lamont note, or on the $500 loan made by complainants to Mrs. Bishop, I shall take further testimony or refer it to a master to ascertain. The certificate for Mrs. Bishop's stock is in the custody of the clerk of this court pursuant to an order entered in this cause and delivery of that certificate by the clerk to the Lamonts will be governed by the terms of that order and by the decree to be entered herein.
The pleadings and testimony disclose that the Lamonts have assigned their interest in their option agreement to the Realty Co., but the Realty Co. has not by its answers filed to complainants' bill and to Mrs. Bishop's counter-claim, prayed for any relief as against the Lamonts. Those parties may adjust and settle their rights as between themselves. *Page 343