25 N.J. Super. 69 (1953)
95 A.2d 485
HARRY G. SPECHT, PLAINTIFF-RESPONDENT, AND OTHERS, PLAINTIFFS,
v.
EASTWOOD-NEALLEY CORPORATION, THE NATIONAL STATE BANK OF NEWARK, AS TRUSTEE, ETC., AND CALVIN H. NEALLEY, DEFENDANTS-APPELLANTS, AND OTHERS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1953.
Decided March 10, 1953.
*70 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Vincent P. Biunno argued the cause for appellants (Messrs. Lum, Fairlie & Foster, attorneys).
Mr. Ernest F. Keer, Jr., argued the cause for respondent (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
While this appeal implicates only the propriety of a denial of a motion to dissolve a pendente lite restraining order, it seems to require a comprehensive consideration of all of the allegations contained in the four counts of the complaint which, viewed in its entirety, reveal the intrinsicalities of the plaintiff's alleged cause of action.
The complaint, fortified by a conventional verification and addressed to the Chancery Division of this court discloses that all of the individual parties to the suit are stockholders of Eastwood-Nealley Corporation, incorporated in New Jersey. During the period from 1935 to 1942 all of the 1,000 shares of the capital stock of the corporation were owned in approximately equal proportions by one Landon Carter, who died in 1941, by the defendant Calvin H. Nealley, and by the plaintiff Harry G. Specht. In 1942 Nealley and Specht acquired all of the stock.
The registered holders of stock at present are Nealley 502 shares, Specht 254 shares, his wife Lily Specht 100 shares, *71 his son Harry M. Specht 100 shares, John G. MacKechnie and Nelson Webb each 20 shares, Harry J. Brady, Noah Bass, Andrew MacKechnie, and Ralph E. Lum, Jr. each one share. It is averred that the beneficial ownership of the stock registered in the names of Bass, Andrew MacKechnie, and Lum remains in Nealley.
Since 1935 Nealley has been president and a director; Specht officiated until March 11, 1952 in the capacities of vice-president, director, and general manager. On November 1, 1935 the company issued its first mortgage bonds in accordance with the terms of a trust indenture in which The National State Bank of Newark, N.J., is the trustee. There are now 155 of those bonds of the face value of $1,000 each outstanding, of which Nealley is the owner of 145 and the plaintiff Harry G. Specht the owner of ten.
Since the restraint pendente lite to which the appellants object relates to the disposition of the outstanding bonds, the terms of an agreement entered into on April 22, 1943 by Nealley, therein designated as the "Grantor," and the plaintiff Harry G. Specht as "Grantee," become particularly relevant. Nealley was at that time the owner of 180 of the bonds. The terms of the agreement are here quoted:
"NOW THEREFORE, the Grantor hereby agrees to sell, transfer and deliver to the Grantee and the Grantee agrees to purchase and pay for one of said bonds at the purchase price of eighty per cent (80%) of the face amount or par value thereof during each and every calendar year, respectively, in which or in any part of which both of the parties hereto shall be living, beginning with the calendar year 1943 and ending with the year during which one or both of the parties hereto shall die.
The Grantee, for himself and his executors and administrators, covenants and agrees to and with the Grantor that at no time during the life of the Grantor will the Grantee, his executors or administrators, sell or otherwise dispose of any of said bonds purchased by the Grantee as hereinabove provided without having first offered them for sale to and re-purchase by the Grantor at the aforesaid purchase price of eighty per cent (80%) of the face amount and par value thereof.
The Grantor, in consideration of the premises and of the sum of One Dollar ($1.00) to him in hand paid by the Grantee at or before the ensealing and delivery of these presents and of the foregoing *72 covenant and agreement of the Grantee, does hereby, for himself, his heirs, legatees, devisees, executor or administrator, give and grant to the Grantee the right to purchase, for and at the purchase price of seventy per cent (70%) of the face amount and par value thereof, all (but not less than all) of the said bonds which shall not have been purchased by the Grantee as hereinabove provided prior to the death of the Grantor, the Grantee to purchase fifty per cent (50%) of said bonds during the first year after the date of the Grantor's death and the remaining fifty per cent (50%) of said bonds during the second year after the date of the Grantor's death, and such option may be exercised whether said bonds are in the possession of the Grantor's heirs, legatee, devisee, executor or administrator; which right and option may be exercised only by the Grantee's paying said purchase price to the Grantor's heirs, legatee, devisee, executor or administrator in cash during the periods hereinabove set forth."
Mention may incidentally be made of an agreement dated October 25, 1949 to which Nealley, Specht, and the trustee were parties extending the maturity date of the $160,000 of bonds then outstanding from November 1, 1955 to November 1, 1965. In association with that transaction Nealley expressly ratified and confirmed his obligations under the provisions of his agreement with Specht dated April 22, 1943.
Such being the situation the plaintiff alleges that in 1948 Nealley with the aid of confederate stockholders incubated the purpose to expel him from the company and to evade performance of the covenants of the mutual agreement of April 22, 1943. It is alleged that to effectuate that purpose Nealley and his allies exercised their majority voting strength unreasonably to minimize the amount of dividends in order to induce the plaintiff to sell to them his shares of stock, assured him of a pension, and ultimately deprived him of his office of vice-president and of his directorship.
To evince the bad faith of those defendants, the plaintiff displays a statement of the net profits of the company after tax for the past several years and the amount of dividends declared, such as for the year 1950, profits of $248,000, aggregate dividends declared $15,000; for the year 1951, profits of $155,841.78, dividends $15,000; for the first six months of 1952, profits $77,815, dividends none. The price offered him for his stock was about $297 per share. He asserts *73 that the book value of the stock is in excess of $1,400 per share and its liquidation value is about $2,000 per share.
The aforementioned allegations constitute the background for the averment in the second count of the complaint that at a meeting of the board of directors held on September 25, 1952 it was resolved that all of the outstanding bonds be redeemed by the company at face value plus accrued interest on November 1, 1952. The plaintiff protests that this action motivated by an evil intent is designed to annihilate his agreement with Nealley to acquire the bonds from him for the price of 80% of their face value.
Upon the filing of the complaint an order to show cause was granted embodying an intermediate restraint against the redemption of the bonds. The defendants unsuccessfully moved to vacate the injunctive provisions of the order, and the order here under review was made enjoining until final hearing the corporation from proceeding to redeem the bonds, the trustee from accepting them and paying the redemption price, and Nealley from disposing of the bonds owned by him to anyone other than to the plaintiff.
It is made evident that the trust mortgage confers upon the corporation the right of redemption. Ordinarily the exercise by the corporation of its right of redemption should not be enjoined merely because of the existence of an agreement between individuals relating to the purchase and sale of the bonds, but in the alleged circumstances of the present case should the court of equity presently infer that the corporation is being utilized as a serviceable instrumentality in the endeavor of its majority stockholders and directors to accomplish in bad faith an ulterior purpose?
While a corporation is customarily regarded in the law as an entity distinct from the individuality of its officers and directors, yet the penetrating eye of equity often observes that the action of the corporation has been infected and contaminated by the sinister purposes of its governing body. In such cases equity has not permitted the corporation as an independent entity to subserve the personal interests of its representatives.
*74 The plaintiff is a minority stockholder. Whether the corporate exercise of the right of redemption was justifiably warranted and the other surrounding facts have not yet been finally determined.
It is nevertheless asserted on behalf of the appellants that the injunctive order was not proper because in any eventuality the plaintiff can be adequately compensated for the loss of his bargain by an award of compensatory pecuniary damages not possibly exceeding an amount equivalent to the difference between the contract price and the face value of the bonds owned by Nealley.
The point is not barren of debatable merit. It seems apparent, however, that in its relation to the incorporated allegations of the first count of the complaint, the second count has a greater breadth than one restricted to the allegations of a cause of action for specific performance. The element of an endeavor fraudulently to frustrate the performance of the agreement is implicit.
The bonds are not procurable in the open market. Not all bonds so abundantly secured and yielding such an interest rate are as attractive and available to the investor. Anent the equitable remedy of specific performance in related cases, vide, Hildinger v. Bishop, 126 N.J. Eq. 334 (Ch. 1939); Bronsdon v. Shupe, 98 N.J. Eq. 67 (Ch. 1925), affirmed 99 N.J. Eq. 449 (E. & A. 1926); Safford v. Barber, 74 N.J. Eq. 352 (Ch. 1908). Moreover the contingency of the death of the plaintiff prior to that of Nealley might be a factor in the present estimation of the compensation for his loss.
In the present case the allegations of the complaint project the inference that the corporate entity is being used for the accomplishment of an unconscionable objective. Contrast, Frank v. Frank's, Inc., 9 N.J. 218 (1952).
Recognizing in a panoramic manner all of the allegations of the plaintiff's complaint, we are not persuaded that the restraining order effective only pendente lite was inequitable. It is not evident that it occasions any material harm to the welfare of the corporation.
The order here impugned is affirmed.