# CHARLESTON.

A. E. MILLER *v.* J. G. FREDEKING *et al.*

(No. 5573)

Submitted May 11, 1926.        Decided May 18, 1926.

1. LANDLORD AND TENANT—*Sale of Lease by Trustee in Bankruptcy As Part of Bankrupt's Assets Does Not Violate Covenant Therein Against Assignment Without Consent of Lessor.*

    Sale of a lease by a trustee regularly appointed in either voluntary or involuntary bankruptcy proceedings, as a part of the assets of the bankrupt's estate, does not violate a covenant in the lease that the lessee shall not assign without the consent of the lessor. (p. 646.)

    (Landlord and Tenant, 35 C. J. § 64.)

2. BANKRUPTCY—*Where Sale of Lease by Trustee in Bankruptcy Was Regularly Made and Confirmed, and Proceeds Distributed, Lessors Cannot Oust Purchaser From Possession in Independent Suit on Theory That Trustee Did Not Elect to Take Lease as Part of Bankrupt's Estate, and Was Not Expressly Authorized to Sell Leasehold Estate.*

    Where such sale is regularly made, confirmed, and the proceeds distributed by the bankrupt court to the creditors, the

lessors cannot oust the purchaser from the possession of the leased premises by an independent suit, on the theory that the trustee did not elect to take the lease as a part of the bankrupt's estate and was not expressly authorized and directed to sell the leasehold estate in the bankruptcy proceeding. (p. 648.)

(Bankruptcy, 7 C. J. § 349.)

3. LANDLORD AND TENANT—*Covenant in Lease That, if Lessee Assigns Without Consent of Lessors, Latter May Re-enter is Not Violated by Subletting.*

A covenant in a lease that if the lessee assigns the lease without consent of the lessors, the latter may re-enter, is not violated by a subletting of the leased premises by the lessee. (p. 649.)

(Landlord and Tenant, 35 C. J. § 68.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Summers County.

Suit by A. E. Miller against J. G. Fredeking and others for an injunction. From a decree for defendants, plaintiff appeals.

*Decree reversed; cause reinstated; injunction perpetuated.*

*James H. Miller* and *A. D. Daly,* for appellant.

*R. F. Dunlap,* for appellees.

LIVELY, JUDGE:

Defendants below, appellees here, hereinafter called defendants, leased in writing to A. H. Burbage a storeroom in the city of Hinton at $100.00 per month, from August 15, 1922, until December 31, 1926, in which writing it was stipulated: "It is also agreed that this lease can not be assigned without leave of the parties of the first part, and that the said parties of the first part shall have a right to reenter for default in payment, or for any breach of covenants herein."

In July, 1924, Burbage filed a voluntary petition in bankruptcy and was adjudged a bankrupt. Appraisers were appointed by the referee in bankruptcy, who appraised the lease at $1,000.00 ("subject to proof of worth"). At a meeting of the creditors duly convened on July 14, 1924, Jas. H. Miller

was selected as trustee of the bankrupt estate and was directed to sell same upon the coming in of the appraisement. He advertised the property, including the lease, for sale and on August 24, 1924, sold the lease and the goods in the storeroom to appellant A. E. Miller, hereinafter called plaintiff. The sale was confirmed, and the proceeds distributed to the creditors, including rent owing defendants at the time Burbage filed his petition and the rent while the trustee had charge.

On September 8, 1924, plaintiff A. E. Miller sold to Mrs. E. H. Marable the goods in the storeroom purchased by him, and agreed that she should have the use and occupation of the storeroom until the expiration of the term of the lease, December 31, 1926, at $100.00 per month, or as long as his right to possession under his purchase continued, with right to re-enter upon default in payment of the rent. Mrs. Marable took possession.

Plaintiff Miller sent checks to defendants for payment of rent, dated September 15th, $16.66, September 30th, $100.00, October 31st, $100.00, and November 29th, $100.00. These checks were returned by the lessors on December 6, 1924, by letter in which lessors relied upon the clause in the lease against assignment, claiming that the trustee's sale, and purchase thereunder by Miller violated that clause and gave the lessors the right to re-enter; and further, that if the trustee's sale did not give them that right, then Miller, by putting Marable in possession for the remainder of the term, had violated the stipulation in the lease, and gave them the right to re-enter. They declined to receive rent from him or recognize his or Marable's possession.

Later the lessors instituted unlawful detainer proceedings against Marable, and Miller instituted this suit to enjoin the prosecution of the unlawful detainer action. Defendants answered, and the parties went to proof. There is practically no conflict in the evidence, except over the payment by Miller of the $16.66 for one-sixth of the month of August and its acceptance, which is immaterial.

The pleadings and evidence disclose the above facts. The lower court dismissed the bill, and plaintiff appealed.

The controlling question is whether the sale of the lease by the trustee in the voluntary bankrupt proceeding violated the stipulation against assignment and gave defendant lessors the right of re-entry.

It is quite generally held that where such transfer or assignment of the lease is made through involuntary bankruptcy proceedings there is no violation of the covenant not to assign without the written consent of the lessor. *Doe* v. *Smith*, 1 Marsh. 359; *Gazlay* v. *Williams*, 52 L. ed. (U. S.) 950, 14 L. R. A. (N. S.) 1199; 35 C. J. 981; 1 Loveland on Bankruptcy Sec. 387; 18 A. & E. Ency. Law 661. But if the lease provides that the lessee's insolvency shall terminate the lease and give the lessor the right to re-enter, the trustee has no right or power to sell the lease for the benefit of the creditors. Jones on Landlord and Tenant Sec. 466, cited in *Gazlay* v. *Williams, supra*. There is no such provision in the lease under consideration.

In an English case, *In re Riggs*, 2 K. B. 16, decided in 1901, it is expressly held that, "The lessee's being adjudged bankrupt on his own petition did not operate as a breach of his covenant not to assign." In the cases of *Weatherall* v. *Geering*, 12 Ves. Jr. 504, and *Onslow* v. *Corrie*, 2 Madd. 330, both holding that a covenant not to assign without the lessor's consent was not violated by an assignment under bankruptcy proceedings, it does not appear whether the bankrupt proceedings were voluntary or involuntary. We can see little difference in principle whether the proceeding is voluntary or involuntary, for the assignment is by operation of law. The filing of the petition in bankruptcy does not necessarily make the petitioner a bankrupt, nor does it follow that his entire property will be exhausted in the payment of his debts.

In *Bemis* v. *Wilder*, 100 Mass. 446, the court said that an assignment by operation of law passed the estate, discharged of the covenant, to the assignee; and that was so where the transfer arose from voluntary proceedings in insolvency as distinguished from proceeding *in invitum*, where the proceeding was not colorable and not merely for the purpose of effecting the transfer in fraud of the lessor, citing Taylor on

Landlord & Tenant Sec. 408. In the recent case (1920) of *In re Prudential Lithograph Co.,* 270 Fed. 469, the circuit court of appeals held (third point of syllabus), "A covenant against assignment or subletting of a lease without the written consent of the lessor is not breached by an assignment by operation of law in the event of the bankruptcy of the lessee." Many of the above cited cases are quoted from in the opinion. Whether the proceeding in bankruptcy in that case was voluntary or involuntary does not clearly appear.

Covenants of the kind under consideration, being in restraint of alienation, are strictly construed by all courts, and are not in favor. In *Randol* v. *Scott,* 110 Cal. 590, a lease was made to two persons as lessees with covenant against assignment, including assignment by bankruptcy or operation of law. One of the lessees went into insolvency in the proper court and his one-half undivided interest in the suit and all of his property, including the one-half interest in the lease, was transferred to his assignee. The court said that the covenant provided that the *lessees* should not assign, that is, by the joint act of the lessees, therefore the assignment by the proceedings in insolvency of only an interest in the lease was not within the meaning of the contract, and that the other lessee could not prevent such assignment. Whether the reasoning is sound is not for us to say. It is illustrative of the attitude of the courts in holding that the very letter of the covenant must be broken before forfeiture will be allowed. See our case of *Easley Coal Co.* v. *Brush Creek Coal Co.,* 91 W. Va. 291.

But it is insisted that the trustee in bankruptcy, J. H. Miller, never accepted the lease as a part of the estate of the bankrupt, made no report of his acceptance to the referee in bankruptcy, and never secured a specific order directing sale of the leasehold, other than the general order to sell all the personal property and assets of the bankrupt's estate.

Without considering the point raised that defendant lessors ratified the ownership of the lease by the trustee by accepting from him rent in arrear ($100.00) and rent during his administration of the estate (one and five-sixths months), with-

out protest or notice to him to elect to take the executory contract of lease; or without considering the point raised that the rule in *Dumpor's* case governs the assignment or transfer to Marable, it is sufficient to say that by operation of law and not by the act of Burbage, the lease was transferred to the trustee for the benefit of his creditors, and was not in contravention of the clause not to assign without the consent of the lessors; and the trustee having taken title to the chattel real, sold it to plaintiff, who now has it. This litigation is not between the trustee and the lessors. Plaintiff holds the title and possession under a valid proceeding at law. Whether it was error for the trustee to sell under the general order to dispose of the assets, we are not called upon to determine. The court in bankruptcy has not been moved to correct that error, if error it was. The order directing sale, and the sale under it was not void. If it was voidable, plaintiff's right continues until that question is determined in the proper forum. If any question of the right of the trustee had been raised before sale, the proper proceeding would have been to obtain an order from the court in bankruptcy, as was done in the *Gazlay* case, supra.

Did the trustee elect to adopt or repudiate the lease? If a trustee does not give notice of his election, his intention may be presumed from his act. Each case must be governed by the particular circumstances surrounding it. Loveland on Bankruptcy Sec. 387. We note that in two English cases, *Page* v. *Gordon*, 2 Stark 309, and *Hastings* v. *Wilson, Holt.* 290 (English Nisi Prius Reports), it seems to have been held that where the trustees sell the bankrupt's estate and reversionary interest in the premises, it amounts to an election on the part of the trustees. In the instant case the appraisers reported the remainder of the term of the lease (29 months) as a part of the bankrupt's estate at a value of $1,000.00; the trustee advertised it for sale and actually sold it. These facts are strongly indicative that he elected to take the lease for the benefit of the creditors. But whether he elected or not, he actually sold the lease, and plaintiff is the owner under the order of a court of competent jurisdiction, which is neither challenged, modified nor reversed.

Another point insisted upon is that plaintiff took the lease under the sale to him by the trustee, subject to the conditions to pay rent, and not to assign without lessors' consent, and that he violated the latter condition by assigning the lease to Marable, thus avoiding the lease and giving lessors right of re-entry. Plaintiff's counsel reply that the covenant does not bind the heirs or assigns of the lessee, does not run with the land, that the rule in *Dumpor's* case applies, and therefore that plaintiff has clear right and power to assign. But when we examine the contract made by plaintiff with Marable we find that the former retains the right to re-enter upon failure to pay the stipulated rent to him. The contract is rather hazy in its meaning, but stripped of pleonasm, it may be fairly construed as a sublease, and therefore not within the covenant against assignment. It will be noted that the covenant inhibits assignment *only* without consent of the lessors. *Goldman* v. *Feder,* 84 W. Va. 600.

The power of the trustee to sell the lease and transfer it, as well as the right of the purchaser (plaintiff) to assign or sublet to Marable, does not seem to have been questioned by the lessors until the checks for rent were returnd to him by letter in December, 1924. Whether this constitutes an estoppel against defendant lessors is unimportant in view of our disposition of the cause, as above stated. The lessors have been paid the rent reserved by them in the lease to Burbage, by the trustee. Plaintiff assumed this burden when he purchased the remainder of the term, and has tendered the rent reserved as it became due, and is bound for future payments. His tender remains good. No injury has resulted to any of the parties. It does not appear that rentals have increased, nor that Miller or his sublessee are undesirable tenants.

Our conclusion is to reverse and set aside the decree dismissing the bill, reinstate the cause, and perpetuate the injunction.

*Decree reversed; cause re-instated; injunction perpetuated.*