33 N.J. Super. 395 (1954)
110 A.2d 329
FRANK D. HOLMES AND ELIZABETH M. HOLMES, INDIVIDUALLY AND TRADING AS HUBER'S MENS WEAR, PLAINTIFFS-RESPONDENTS,
v.
MALCOLM E. HARRIS, AINSLIE N. HARRIS, MARIAN A. HARRIS, OLGA E. HARRIS, DEFENDANTS-RESPONDENTS ON APPEAL AND ON CROSS-CLAIM, AND MONMOUTH SERVICE COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT AND CROSS CLAIMANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1954.
Decided December 31, 1954.
*397 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Maurice A. Potter argued the cause for defendant and cross claimant-appellant (Messrs. Potter and Fisher, attorneys).
Mr. Isadore H. Colton argued the cause for plaintiffs-respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
In this action the essentially significant facts are not in dispute. It will be serviceable to marshal them in chronological sequence.
On February 11, 1946 Rose M. Harris let the ground floor of premises designated No. 185 Broadway, Long Branch, New Jersey, to Huber's, Inc., a corporation of this State, for a term expiring on March 31, 1956. The transaction was evidenced by a written lease duly executed by the parties which enveloped the two following paragraphs of special relevancy to the present alleged cause of action:
"5. It is agreed that the Lessee shall not assign this lease without the written consent of the Lessor. The Lessee may, however, sublet the whole, or any part of the premises, in which event, however, the Lessee shall remain liable to make the rent payments provided for herein, and for the fulfillment of all the other covenants and conditions hereof.

* * * * * * * *
22. It is agreed that in the event the Lessor shall decide to sell the land and building of which the leased premises are a part, the Lessee shall have the first right of refusal to purchase the same on terms and conditions acceptable to Lessor. The Lessee shall have a period of 10 days after the receipt of written notice directed to the leased premises of terms and conditions acceptable to Lessor in which to determine whether to meet said terms and conditions and to give the Lessor written notice of the acceptance thereof. Said Notice to Lessor to be directed to her in care of Malcolm Harris, 1001 Main Street, Asbury Park, New Jersey."
*398 The lessor died on December 6, 1951 and by her last will and testament devised the demised premises to her sons, Malcolm and Ainslie Harris, who are identified as defendants in this action.
On September 15, 1952, in consequence of the refusal of the sons of the deceased lessor to consent to an assignment of the lease, the lessee, Huber's, Inc., sublet the demised premises to the plaintiff Frank D. Holmes for a period commencing on September 15, 1952 and expiring on March 24, 1956 at the same rental the lessee, Huber's, Inc., was obligated to pay by the terms of the lease of February 11, 1946. Cf. Firth v. Rowe, 53 N.J. Eq. 520 (Ch. 1895); Wilson v. Cornbrooks, 104 N.J.L. 418 (E. & A. 1928); Dries v. Trenton Oil Co., Inc., 17 N.J. Super. 591 (App. Div. 1952). Noticeably here the term of the sublease expired seven days before that of the basic lease. Legal wizardry? However, if the subletting was violative in effect of the provision against the assignment of the lease, an objection thereto is not available to the appellant.
In recognition of paragraphs 5 and 22 of the basic lease, the sublease to the plaintiff Holmes comprised the following related provisions:
"5. It is agreed that the Tenant shall not assign this lease without the written consent of the Landlord. The Tenant may, however, sub-let, the whole or any part of the premises, in which event, however, the Tenant shall remain liable to make the rent payments provided for herein, and for the fulfillment of all the other covenants and conditions hereof.

* * * * * * * *
22. It is agreed that in the event that the owner of the land and building of which the lease premises are a part, the said owner being the lessor of the Landlord herein, shall decide to sell the premises, then in that event the first right of refusal to purchase the same on terms and conditions acceptable to the said Rose M. Harris, Lessor, shall be and become the right and privilege of the Tenant herein, the Landlord herein hereby assigning, setting over and transferring the same unto the Tenant herein, subject only to the conditions set forth in Paragraph 22 of the Lease between Rose M. Harris, Lessor, and Huber's, Inc., Lessee, dated February 11, 1946. And the Landlord undertakes and agrees to execute any and all instruments required in such an event."
*399 At this point in the narrative of facts it is significant to notice that the original lessee, Huber's, Inc., not only sublet the demised premises to the plaintiff Holmes, but by the sublease also assigned to the latter the option to purchase the property accorded by the terms of paragraph 22 of the lease of February 11, 1946.
In its pragmatical effect as between Huber's, Inc., and Holmes, inter sese, the latter, although nominally a sub-tenant, acquired the use and occupation of the demised premises in substitution for and under essentially the same terms as Huber's, Inc., except that Huber's, Inc., continued to be responsible for and in practice currently paid the rent to the landlords. It is noted that the landlords were aware of this transplantation and condoned the impropriety of it, if any, during the ensuing years. Cf. North v. Jersey Knitting Mills, 98 N.J.L. 157 (E. & A. 1922); Garbarine v. Reade, 95 N.J. Eq. 495 (Ch. 1924); Plassmeyer v. Brenta, 24 N.J. Super. 322 (App. Div. 1953).
Next in the progression of occurrences is the notice bearing date March 5, 1954 addressed by Malcolm and Ainslie Harris, the owners of the property, to Huber's, Inc., and to its subtenants or assigns, of which the following is a reproduction:
 "March 5, 1954.
 Huber's Inc., and or its Sub-Tenants or Assigns,
 185 Broadway
 Long Branch, N.J.
TO WHOM IT MAY CONCERN:
Pursuant to Clause 22 of a certain lease, dated February 11, 1946, made by Rose M. Harris, as Lessor, and Huber's Inc. as Lessee, and covering premises known as No. 185 Broadway, Long Branch, N.J., you are hereby notified that said Lessor, now deceased, by Ainslee Harris and Malcolm E. Harris, lessor's successors in title, have decided to sell the lands and buildings of which the above-mentioned leased premises is a part and by reason of your `right of refusal, to purchase the property of which the leased premises is a part, on such terms and conditions as may be acceptable to the Lessor, please be advised that the terms and conditions acceptable to said owners for the purchase of said property is the payment of the sum of $30,000.00 in cash, payable 10% or $3,000.00, upon the signing of the contract of sale and $27,000.00 cash on the closing *400 of title and delivery of Bargain and Sale Deed with covenant against grantor on or before May 1, 1954 with adjustments to be made as of the date of the closing of title, and with said premises to be sold subject to the rights of the lessee, or its assigns, under above mentioned lease, also subject to such state of facts as an accurate survey and inspection of the premises may reveal, and also subject to the burden or easement of a common or party wall running along the west side of the property being sold and to the use of said party wall by the owners of property lying to the west of said leased premises in common with the owners of the leased premises.
Also, in accordance with the provisions of said Clause 22 of the aforesaid lease, will you kindly advise Ainslee Harris and Malcolm E. Harris, by written notice directed to Malcolm E. Harris, at 1001 Main Street, Asbury Park, New Jersey, whether you wish to purchase said property under the aforesaid terms and conditions and for the aforesaid price, said notice to be given within 10 days after the delivery of this written notice to the leased premises.
 ROSE M. HARRIS, LESSOR
 (now deceased.)
 By: AINSLEE HARRIS and
 MALCOLM E. HARRIS
 By: s/ Anthony T. Woolley
 Their Attorney
 180 Broadway
 Long Branch, N.J."
It should be observed that the notice was addressed to "Huber's, Inc., and or its Sub-Tenants or Assigns."
However, on the following day, March 6, 1954, the owners of the property, Malcolm and Ainslie Harris, and their respective wives executed and delivered a contract by the covenants of which they obligated themselves conditionally to convey the property to the defendant Monmouth Service Company.
The terms and contingent conditions of the contract are vivid. Those of particular pertinency are here quoted:
"The within described premises is also being sold subject to the rights of Hubers, Inc., a New Jersey corporation, or any sub-tenant or assignee thereof, in and under a certain lease dated Feb. 11, 1946, made by and between Rose M. Harris as lessor and said Hubers, Inc., as lessee, which said lease expires on March 31, 1956, and which said lease calls for a monthly rental of $250.00 per month, payable on the first day of each and every month in advance, and which lease covers store premises located on above described premises, and which store premises is known as 185 Broadway, Long Branch, N.J.
*401 In so far as the Seller is concerned, this contract is contingent upon seller's ability to secure from Hubers, Inc. and or its subtenants or assigns, a release of the `right of refusal' as contained in Clause 22 of a certain lease dated February 11, 1946, between Rose M. Harris, Lessor (now deceased), and Huber's, Inc., Lessee.
Seller agrees to serve upon Huber's, Inc., Lessee, at the leased premises, written notice of the terms of this contract, and to notify said Lessee of proposed sale in such other manner as is calculated to give Lessee notice of the terms upon which Lessor is willing to sell the leased premises, in accordance with the provisions of said Clause 22."
On March 15, 1954, within the specified period of ten days, the subtenant Holmes served upon the defendants Malcolm and Ainslie Harris and their attorney a written unqualified acceptance of the offer to purchase the property, which offer had been transmitted to him in pursuance of paragraph 22 of the lease of February 11, 1946, and Holmes also attached to the acceptance a certified check for the down payment of $3,000.
The vendee, Monmouth Service Company, declined to relinquish and terminate its rights, if any, under the contract of March 6, 1954, and neither Huber's, Inc., nor the plaintiff Holmes would execute "a release of the `right of refusal' as contained in Clause 22 of a certain lease dated February 11, 1946 * * *" which was, as already observed, a contingency expressly embodied in the Monmouth Service Co. contract. Thus circumstanced, the defendants Harris were unwilling to convey the property to either the plaintiffs or to the Monmouth Service Co.
The solution of this quandary was sought by the prosecution of the present action in which the plaintiffs requested a judgment obliging the defendants Harris specifically to consummate the conveyance to the plaintiffs or respond to them in damages and also a judicial declaration that the rights of the plaintiffs are paramount and superior to those of the defendant Monmouth Service Co. The defendant last mentioned, by way of cross-claim against the defendants Harris, demanded the specific performance of its contract of March 6, 1954 or damages for the company's consequential expenditures.
*402 Since the pleadings and the documentary exhibits disclosed the aforenoted uncontroverted facts, the plaintiffs applied to the court for a summary judgment in their favor. Judge Drewen resolved that the answers of the defendants to the complaint did not aver any legal or equitable defense to the allegations of the plaintiffs' complaint and that the cross-claim of the defendant Monmouth Service Co. was without substance, and in pursuance of R.R. 4:55-2 final judgment was directed to be entered effectuating the plaintiffs' prayer for the specific performance by the defendants Harris of the conveyance to the plaintiffs. Only the defendant Monmouth Service Co. appeals. Why?
Assuredly under the terms and provisions of the agreement of March 6, 1954 the premises were to be conveyed to the Monmouth Service Co. "subject to the rights of Huber's, Inc., a New Jersey corporation, or any sub-tenant or assignee thereof, in and under a certain lease dated Feb. 11, 1946 * * *," and moreover the obligation of the vendors to convey was expressly made "contingent upon Seller's ability to secure from Huber's Inc., and or its sub-tenants or assigns," the designated release of the option granted by paragraph 22 of the original lease.
It must therefore be acknowledged that the vendee, Monmouth Service Co., was aware of the option conferred by the master lease and cognizant of the precautionary insertion in the contract of the condition patently designed to protect the vendors from a twofold liability. The equities cannot be inattentive to those evident facts.
The present appeal therefore rests predominantly upon the insistence that the subtenant, Holmes, did not lawfully acquire by virtue of the sublease any right to the exercise of the option to purchase the property which had initially been accorded to the lessee, Huber's, Inc.
Introducing the discussion of this point, it is pertinent to recall that the original lease, that is, the lease of February 11, 1946, expressly provided that the lessee, Huber's, Inc., should not assign it ("this lease") without the written consent of the lessor, but that the lessee might sublet the whole *403 or any part of the demised premises. Paragraph 22 by which the option to purchase was granted does not embrace any restrictive qualification whatever upon the transference and assignability of the option. Moreover the option with which we are concerned is sufficiently definite and certain. Vide, Gutch v. Meccia, 142 N.J. Eq. 430 (Ch. 1948).
The contention of the appellant appears to be inspired by the notion, inapplicable here, that the subtenant, Holmes, had no contractual privity with the lessor or her successors in title anent the option and therefore could not avail himself of the covenant. Cf. Cifelli v. Santamaria, 79 N.J.L. 354 (Sup. Ct. 1910).
The misapprehension dissolves when it is recognized as it is in this jurisdiction that an option to purchase the demised premises such as this constitutes a covenant independent and separable from the lease as such, and in the absence of a negative provision the option is as assignable as any other contractual right. Behr v. Hurwitz, 90 N.J. Eq. 110 (Ch. 1918); Polish-American Volunteer Defenders, etc., v. Roman Catholic Church, etc., 102 N.J. Eq. 73 (Ch. 1927); Andreula v. Slovak Gymnastic, etc., 140 N.J. Eq. 171 (E. & A. 1947); Wolk v. Widlansky, 142 N.J. Eq. 165 (Ch. 1948), affirmed 1 N.J. 491 (1949). An option is a right which, by its inherent nature, is incapable of being leased. It is a right granted to the lessee of an essentially different character than that of the letting, although perhaps frequently it is a component of the transaction in its entirety.
Absent a prohibitory or restrictive contractual restraint, both a lease and the option to purchase thereby conferred are assignable and may be specifically enforced in equity at the suit of the assignee. Tantum v. Keller, 95 N.J. Eq. 466 (Ch. 1924), affirmed 96 N.J. Eq. 672 (E. & A. 1924); Levin v. Nedelman, 142 N.J. Eq. 769 (E. & A. 1948); Matlack v. Arend, 2 N.J. Super. 319, 331 (Ch. Div. 1949).
In the present case it is also mildly proposed on behalf of the appellant that the provision encamped in paragraph 5 of the original lease denying the lessee the privilege of assigning the lease without the written consent of the lessor should *404 be construed in its negative and suppressive import and application to encircle the assignment of the option to purchase stipulated by the extraneous paragraph 22 of the instrument. The bone of this argument is marrowless. Such a proposed construction would not only be judicially unwarrantable but, indeed, offensive to the evident practical interpretation entertained and adopted by the parties to the lease and their successors in interest.
To sustain the assurance that this case has been reviewed from top to toe, we may in concluding this opinion divulge that we have not been entirely heedless of the fact that aside from the option, the defendants Harris on March 5, 1954 transmitted to the plaintiff Holmes a written offer to convey the designated premises to him on the specified terms provided the offer was accepted by Holmes within ten days thereafter.
On March 6, 1954, the date of the execution of its contract, Monmouth Service Co. probably knew of the delivery of the offer to Holmes, certainly knew by the terms of its contract of the intention to tender such an offer to Holmes. Holmes dispatched to the offerors a timely acceptance of the offer.
We are unable to ascertain the respect in which the final judgment is either erroneous in law or inequitable.
Affirmed.