312 S.E.2d 759

**Hughey E. RANDOLPH**

v.

**The KOURY CORPORATION, etc.**

No. 15846.

Supreme Court of Appeals of West Virginia.

Jan. 27, 1984.

---

**5.** See note 3, *supra*.

John J. Nesius, Davis & Nesius, So. Charleston, for appellant.

Alfred B. McCuskey, II, St. Albans, for appellee.

MILLER, Justice:

The Koury Corporation appeals from an order of the Circuit Court of Kanawha County which required it to convey to Hughey E. Randolph a parcel of property located in St. Albans, West Virginia. The controversy below centered on the question of whether a purchase option contained in a lease between the Koury Corporation and the American Oil Company was assignable to Mr. Randolph. Another issue is whether the terms of the assignment had been met when Mr. Randolph attempted to exercise the option. A further issue relates to Koury's claim that specific performance was improper because the option price and the fair market value of the property were grossly disproportionate. We find no reversible error and affirm the judgment of the circuit court.

On March 28, 1958, the Koury Corporation leased a parcel of real estate to the American Oil Company. The lease was for an initial term of ten years, with renewal options. The lease also granted an option to the American Oil Company to purchase the property for $40,000 during the term of the lease or during any renewal term.

The granting clause of the lease contained language of assignability: "That LESSOR has leased, let, demised and by these presents does lease, let and demise unto LESSEE, its successors, sublessees and assigns, the property situate in the City of St. Albans, County of Kanawha, State of West Virginia." The clause relating to the option to purchase contained this language: "LESSOR covenants and agrees, upon payment of the purchase price, to convey the said property to LESSEE, *its successors and assigns*, by a recordable instrument having good and

marketable title in fee simple." (Emphasis added) [1]

In 1968, portions of the lease were renegotiated because the American Oil Company wanted to enlarge and remodel the station. As a result of the negotiations, a "Lease Supplement" dated March 20, 1969, was entered into. In the supplement, the rent due under the lease was increased. The "Lease Supplement" did not modify the provisions regarding the purchase option.

By assignment dated April 19, 1978, Amoco Oil Company, successor to the American Oil Company, assigned the 1958 lease with all supplements to Hughey E. Randolph. The assignment was to be effective June 1, 1978. Counsel for Mr. Randolph, by letter dated June 8, 1978, notified the Koury Corporation of Mr. Randolph's election to exercise the purchase option.

The Koury Corporation did not respond to this letter, and subsequently refused to convey the property to Mr. Randolph. Mr. Randolph then instituted an action for specific performance in the Circuit Court of Kanawha County.

The Koury Corporation defended by asserting that the option was not assignable. It also contended that even if it were assignable, the assignment between Amoco and Mr. Randolph required that title be conveyed to Mr. Randolph by June 30, 1978, and since title was not conveyed by that date, the assignment had expired. Finally, Koury suggested at trial that because the purchase price in the option was substantially below the fair market value of the property, it was inequitable to order specific performance.

## ASSIGNABILITY OF THE OPTION

In arguing against the assignability of the option to purchase, Koury relies heavily on *Rease v. Kittle*, 56 W.Va. 269, 49 S.E. 150 (1904), where we characterized an option to purchase real estate as a personal right. We held that in the absence of words of assignability, it could not be assigned. Here, we deal with a lease that does contain language of assignability.

■ Furthermore, we have cases that recognize that a lease is ordinarily assignable unless there is some clear language prohibiting assignability, as we stated in Syllabus Point 2 of *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. 291, 112 S.E. 512 (1922):

"Being a restraint upon alienation, a condition against assignment by a lessee or an assignee of a lessee is governed by the rule of strict construction, and it does not exist unless it has been clearly and definitely provided in the lease or some other written instrument made collateral thereto." [2]

*See also Rees v. Emmons Coal Mining Co.*, 88 W.Va. 4, 106 S.E. 247 (1921); *cf. Miller v. Fredeking*, 101 W.Va. 643, 133 S.E. 375 (1926); 11B Michie's Jurisprudence *Landlord & Tenant* § 57 (1978).

1. The pertinent language of this portion of the option agreement is:

"In the event LESSEE shall exercise its purchase option under either (a) or (b) above, it shall do so by written notice to LESSOR; and in the event LESSEE shall exercise either of said purchase options, LESSOR covenants and agrees, upon payment of the purchase price, to convey the said property to LESSEE, its successors and assigns, by a recordable instrument having good and marketable title in fee simple, with covenants of warranty and further assurances, as LESSEE shall require, free of all claims, liens, easements, restrictions and encumbrances; settlement of the purchase price, and conveyance of the property to LESSEE, shall be made within sixty (60) days from the date of the sending of such notice exercising said option; but actual tender of the purchase price by the purchaser or tender of deed by the seller shall not be necessary, and neither party shall be deemed to be in default until after written demand for performance shall have been made by the other party."

2. We also held in Syllabus Point 3 of *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. 291, 112 S.E. 512 (1922), that:

"When there is a condition in a lease against assignment of the term by the lessee, without the consent of the lessor, and such consent is given to one assignment, without any restriction as to further assignments, the condition is completely waived and the assignee may assign the term without the consent of the lessor."

■ The general rule elsewhere is that unless there is some statutory prohibition or an express provision in the lease to the contrary, a lease on real property, other than a tenancy at will, is assignable.[3] *Crump v. Tolbert*, 210 Ark. 920, 198 S.W.2d 518 (1946); *Kassan v. Stout*, 9 Cal.3d 39, 106 Cal.Rptr. 783, 507 P.2d 87 (1973); *Ochsner v. Langendorf*, 115 Colo. 453, 175 P.2d 392 (1946); *Rauch v. Circle Theater*, 176 Ind.App. 130, 374 N.E.2d 546 (1978); *Valley Oil Co. v. Barberian*, 344 Mass. 759, 183 N.E.2d 109 (1962); *Todd v. Board of Educational Lands and Funds of Neb.*, 154 Neb. 606, 48 N.W.2d 706 (1951); *Kruger v. Page Management Co., Inc.*, 105 Misc.2d 14, 432 N.Y.S.2d 295 (1980); *Gripentrog v. City of Wahpeton*, 126 N.W.2d 230 (N.D.1964); *Powerine Co. v. Russell's, Inc.*, 103 Utah 441, 135 P.2d 906 (1943); 49 Am.Jur.2d *Landlord and Tenant* § 398 (1970); 51C C.J.S. *Landlord and Tenant* § 31 (1968). In the present case, we note that the lease was assignable. Furthermore, we are aware of no statute that prohibits assignability of leases.[4]

■ We do not appear to have a case where we have considered the question of whether a purchase option contained in an assignable lease is assignable and passes with the assignment of the lease. Other courts have held that where a lease is assignable and it contains an option to purchase, unless there is clear language in the lease that limits the assignability of the option, the option is also assignable. *Berrien County Fruit Exchange v. Pallas*, 314 Mich. 66, 22 N.W.2d 74 (1946); *Jamson v. Poulos*, 184 Neb. 480, 168 N.W.2d 526 (1969); *Summa Corp. v. Richardson*, 93 Nev. 228, 564 P.2d 181 (1977), *appeal on remand*, 95 Nev. 399, 596 P.2d 208 (1979); *Holmes v. Harris*, 33 N.J.Super. 395, 110 A.2d 329 (1954); *Humble Oil & Refining*

*Co. v. Lennon*, 94 R.I. 509, 182 A.2d 306 (1962); *Rickard v. Dana*, 74 Vt. 74, 52 A. 113 (1902); 49 Am.Jur.2d *Landlord and Tenant* § 374 (1970). We believe this rule is consistent with our general rule favoring assignability as set out in *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. 291, 112 S.E. 512 (1922).

■ In the case before us, we find no language in the lease that expressly provides that the option itself is not assignable. As previously noted, there is language in the option clause that suggests assignability but we need not rely upon this language in resolving the question before us. The inquiry ends when we find that the lease is assignable and contains no express language prohibiting assignment of the option. We, therefore, find no merit in regard to Koury's nonassignability issue.

## VALIDITY OF ASSIGNMENT

Koury maintains that the contract of assignment between Amoco and Mr. Randolph expired by its own terms because it contained language to the effect that the assignment would terminate "[i]n the case of the failure of the Assignee as a result of Assignee's acts or omissions, to exercise purchase option and title is not conveyed to Assignee for any reason by the 30th day of June, 1978."

Additionally, Koury contends that Mr. Randolph failed to comply with the terms of the contract since it required him to deposit a certified check with an attorney approved by the assignor, Amoco, once Mr. Randolph exercised the option.[5] There appears to be no dispute factually that this provision was not complied with by Mr. Randolph.

Koury cites several cases to sustain its position, but we believe they are inapplicable. It relies on the single Syllabus of

---

**3.** The rationale for the nonassignability of a tenancy at will rests on the fact that it is terminable at any time. 49 Am.Jur.2d *Landlord and Tenant* § 401 (1970).

**4.** W.Va.Code, 36–4–11 (1931), deals with the form of a covenant against assigning or subletting but does not prohibit assignment.

**5.** The provision of the contract of assignment containing this language was: "Assignee agrees, in the event Assignee exercises option to purchase, to escrow a Certified Check in the amount of FORTY THOUSAND DOLLARS ($40,-000.00) with an attorney, approved by Assignor, to insure performance of the premises under the conditions of this Assignment."

*Rutherford v. MacQueen*, 111 W.Va. 353, 161 S.E. 612 (1931), where we said that "[a] party relying upon a contract is bound by all its legitimate terms." From this, it argues that since Mr. Randolph did not place the $40,000 in escrow with Amoco's attorney, he did not comply with the assignment contract. However, this begs the question of whether Koury, who is not a party to the assignment contract, is entitled to assert its provision as a defense.

A similar problem exists regarding Koury's reference to *Weaver v. Burr*, 31 W.Va. 736, 8 S.E. 743 (1888), and *Pollock v. Brookover*, 60 W.Va. 75, 53 S.E. 795 (1906). These two cases contain language to the effect that where an offer is made, an acceptance, in order to be valid, must be complete and unequivocal with regard to the terms of the offer. Koury argues that the option to purchase in the lease was in the nature of an offer. The lease-option language gave Koury sixty days after the date of the exercise of the option in which to close the transaction. Koury then points to the letter of June 8, 1978, written by Mr. Randolph's attorney to Koury and contends that because it contained the following language, the letter in effect, constituted a conditional acceptance: "According to the provisions in said assignment, a failure to consummate said transaction prior [to] June 30, 1978, would work a forfeiture of said assignment of lease." [6]

We do not agree. The letter when read in its entirety clearly indicates a desire to exercise the option: "Please be advised that Mr. Randolph elects to exercise said option." It also advises that "Mr. Randolph ... is ready, willing and able to consummate said transaction at the present time." It is true that the letter mentions the assignment deadline of June 30, 1978, and asks for an expeditious closing. However, there is no statement in the letter that advises that as a condition of the exercise of the option, the transaction must be closed by June 30, 1978.

What Koury attempts to do is to seize on the requirements of the contract of assignment between Amoco and Mr. Randolph and to use them as a defense to excuse its performance under the lease option.

The general rule is that where a party has a contractual obligation, he, as the obligor, may not escape performance when the other party, the assignor, has assigned the contract right to a third party, the assignee, by pointing to some defect in the assignment, unless such defect renders the assignment void. This statement is made in 6 Am.Jur.2d *Assignment* § 102 (1963): "But the obligor may not defend on any ground which renders the assignment voidable only, such as fraud or undue influence, nor can he interpose the defense of lack of consideration or that the assignee occupied a fiduciary relationship to the assignor." *E.g., Glendale Fruit Co. v. Hirst*, 6 Ariz. 428, 59 P. 103 (1899); *Ingle Mfg. Co. v. Scales*, 36 Cal.App. 410, 172 P. 169 (1918); *Barlow v. Lande*, 26 Cal.App. 424, 147 P. 231 (1915); *Forsyth v. Ryan*, 17 Colo.App. 511, 68 P. 1055 (1902); *Sprague*

---

**6.** The relevant portion of the June 8, 1978 letter provides as follows:

"Please be advised that the undersigned represents Hughey E. Randolph with regard to his desire to secure title to the above indicated premises. By assignment of lease bearing date April 19, 1978, Amoco Oil Company, a Maryland Corporation, assigned unto Mr. Randolph that certain agreement lease and lease rider dated March 28, 1928 [sic], between Koury Corporation and the American Oil Company.... Please be advised that Mr. Randolph elects to exercise said option to purchase the demised premises for the consideration of $40,000.

"Pursuant to the aforementioned assignment of lease, a copy which is enclosed herewith, the assignee therein is required to exercise the option and to acquire title prior to

June 30, 1978. According to the provisions in said assignment, a failure to consummate said transaction prior June 30, 1978, would work a forfeiture of said assignment of lease. Accordingly, Mr. Randolph is most desirous of consummating said transaction as expeditiously [sic] as possible.

"Please advise as to the availability of the appropriate officers of Koury Corporation for closing of said transaction. Mr. Randolph has secured a commentment [sic] for a mortgage loan to effect said transfer and is ready, willing and able to consummate said transaction at the present time. If it appears that the appropriate corporate officer of Koury Corporation cannot be in attendance, please advise of the manner with which you would prefer to consummate said closing by mail."

*v. Rust Master Chemical Corp.*, 320 Mass. 668, 70 N.E.2d 831 (1947); *In re Holden*, 271 N.Y. 212, 2 N.E.2d 631 (1936); *General Office Service Co. v. Ledbetter*, 221 S.W.2d 932 (Tex.Civ.App.1949).

We have stated somewhat the same principle in Syllabus Point 4 of *Siever v. Klots Throwing Co.*, 101 W.Va. 457, 132 S.E. 882 (1926):

> "A defendant cannot defend an action brought by the assignee of a cause of action, on the ground that the assignment was made without consideration or upon no consideration, nor on the ground that the assignment was made to plaintiff for the purpose of collecting the debt."

*See also State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641, 651 (1981); *Price v. Moran*, 99 W.Va. 498, 503, 129 S.E. 472, 474 (1925).

The reason most frequently advanced for this rule is that the initial obligor should not be able to defeat an assigned claim unless the assignment is void in which event his right to defend arises to prevent the possibility of a double recovery. *E.g.*, *Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W.2d 426, 430 (Tex.Civ.App.1975); *Ahrendt v. Bobbitt*, 119 Utah 465, 468–69, 229 P.2d 296, 297–98 (1951).

In *Tri-Cities Construction, Inc. v. American National Insurance Co.*, the insurance company attempted to defeat its obligation under a loan agreement to one MarkLand. The loan agreement had been assigned by MarkLand to Tri-Cities and in the contract of assignment, MarkLand was required to complete portions of the transaction by a specified date. MarkLand did not meet the deadline and the insurance company claimed that this failure relieved it of any further obligation under its loan agreement. The court rejected this contention on the basis that the failure did not render the contract of assignment void:

> "The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice." *Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W.2d at 430.

■ In the case before us, we note that at no time did Amoco take the position that the contract of assignment had expired. The assignment contract contained no language that time was of the essence. Thus, we believe that the failure of Mr. Randolph to pay the $40,000 into escrow and to receive title to the property by June 30, 1978, were not events which rendered the assignment contract void such that Koury could assert them as defenses.

## DISPARITY OF PRICE

■ The Koury Corporation's third assertion is that the trial court's ordering of specific performance was inequitable under the circumstances of the case. We decline to give any extended discussion to this issue for several reasons. First, it does not appear that this issue was seriously asserted at the trial. The matter was not raised in the defensive pleadings of Koury. The only reference to the current market value of the premises occurred in a cross-examination question posed to the plaintiff, Mr. Randolph, who was asked if he had had the property appraised when he arranged to purchase it. He indicated that he had and was asked the appraisal price and responded: "I think it was ninety thousand. I'm not sure." We do not believe this testimony, which was obviously hearsay since Mr. Randolph referred to the out-of-court statement of a third party, the appraiser, was sufficient to raise the issue of a grossly disproportionate purchase price.

Furthermore, the lessee paid the costs of improvements under the 1968 supplemental lease as indicated by the following language: "the alteration and conversion to colonial design of the existing station building and improvements located upon the demised premises and the construction of a

third bay thereto by Lessee at Lessee's expense." Obviously, the value of the improvements placed thereon by the Lessee would serve to enhance the market value of the property and would be a factor in determining if the initial $40,000 purchase price was inequitable. *See* Annot., 11 A.L.R.2d 390 (1950).

■ Finally, we note that the trial judge made no reference to such an issue in his memorandum opinion. We have traditionally held as stated in Syllabus Point 1 of *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971):

"In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."

*See also Wells v. Roberts*, 167 W.Va. 580, 280 S.E.2d 266 (1981); *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978).

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.